

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ismael Serrano Rivera, Mayda Enid Báez Lugo, ambos por sí y en representación de la Sociedad Legal de Gananciales compuesta por ambos<br><br>Peticionarios<br><br>v.<br><br>Foot Locker Retail, Inc.<br><br>Recurrido | Certiorari<br><br>2011 TSPR 134<br><br>182 DPR \_\_\_\_ |

Número del Caso: AC - 2009 - 58

Fecha: 15 de septiembre de 2011

Tribunal de Apelaciones:

Región Judicial de Ponce Panel VIII

Juez Ponente:

Hon. Sixto Hernández Serrano

Abogados de la Parte Peticionaria:

Lcdo. Miguel A. Arroyo Díaz

Abogados de la Parte Recurrida:

Lcdo. Luis D. Ortiz Abreu
Lcda. Michelle L. Holley - Vázquez

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ismael Serrano Rivera, Mayda
Enid Báez Lugo, ambos por sí
y en representación de la
Sociedad Legal de Gananciales
compuesta por ambos

                            AC-2009-58

    Peticionarios

        v.

Foot Locker Retail, Inc.

    Recurrido

    Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 15 de septiembre de 2011.

En esta ocasión debemos expresarnos acerca de cuándo comienza el término prescriptivo que tiene una persona para reclamar al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, de manera contingente a la reclamación que haga su consorte por discrimen en el empleo al amparo de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como Ley contra el discrimen en el empleo, 29 L.P.R.A. sec. 146 *et seq.*

Concluimos que en esas circunstancias el punto de partida para computar el término prescriptivo de un año para que una persona presente una causa de acción al amparo del Art. 1802 del Código Civil,

*supra*, comienza desde el instante en que el titular de la acción conoce que su consorte fue discriminado en su empleo.

I

El señor Serrano Rivera trabajó para Foot Locker Retail, Inc. (Foot Locker) desde agosto de 1978 hasta el 15 de octubre de 2002, fecha en que fue despedido de su empleo. Por lo anterior, el 22 de octubre de 2002 el señor Serrano Rivera presentó una reclamación contra Foot Locker por despido injustificado ante el Negociado de Normas del Trabajo del Departamento del Trabajo y Recursos Humanos de Puerto Rico (Negociado de Normas), conforme a la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como Ley de indemnización por despido sin justa causa, 29 L.P.R.A. sec. 185 *et seq.*[1]

No obstante lo anterior, el 13 de marzo de 2003 el señor Serrano Rivera desistió de la querella presentada ante el Negociado de Normas por la alegada tardanza de estos en la tramitación de la querella.[2] Ese mismo día, el señor Serrano Rivera y la señora Báez Lugo (los peticionarios) remitieron una carta a Foot Locker por medio de su representación legal con el propósito expreso de interrumpir "cualquier término prescriptivo a favor de los reclamantes o sus familiares". En dicha carta, los

---

[1] Se notificó a Foot Locker, el 6 de marzo de 2003.

[2] Se notificó a Foot Locker, el 7 de abril de 2003.

peticionarios hicieron referencia a la querella presentada ante el Negociado de Normas, de la cual habían desistido.

Así las cosas, el 28 de agosto de 2003 el señor Serrano Rivera presentó otra querella contra Foot Locker, esta vez ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos de Puerto Rico (Unidad Antidiscrimen) por alegado discrimen por edad, conforme a la Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como Ley contra el discrimen en el empleo, 29 L.P.R.A. sec. 146 *et seq.* Así, el 9 de marzo de 2004 los peticionarios remitieron una segunda carta a Foot Locker por medio de su representación legal con la intención de interrumpir nuevamente el término prescriptivo de cualquier reclamación que resultara del despido del señor Serrano Rivera.

Según surge del expediente, posterior a la fecha del 9 de marzo de 2004 los peticionarios no cursaron a Foot Locker ninguna otra carta relacionada a sus reclamaciones, ni hicieron requerimiento extrajudicial sobre el alegado despido injustificado del señor Serrano Rivera conforme a la Ley Núm. 80, *supra*. Tampoco surge que Foot Locker haya admitido responsabilidad alguna por las alegaciones hechas por los peticionarios en sus reclamaciones.

Entretanto, el 14 de septiembre de 2006 la Unidad Antidiscrimen notificó al señor Serrano Rivera, con copia a Foot Locker, el cierre del caso ante ellos al amparo de la Ley Núm. 100, *supra*, dado al desistimiento del primero.

Además, la Unidad Antidiscrimen informó al señor Serrano Rivera sobre la concesión del permiso que solicitó el 6 de septiembre de 2006 para litigar su caso al amparo de la Ley Núm. 100, *supra*.

Así, pues, el 15 de agosto de 2007 los peticionarios presentaron una demanda contra Foot Locker ante el Tribunal de Primera Instancia, Sala Superior de Ponce. Por un lado, el señor Serrano Rivera reclamó indemnización al amparo de la Ley Núm. 80, *supra*, y la Ley Núm. 100, *supra*, por despido injustificado y discrimen por edad, respectivamente. También, el señor Serrano Rivera exigió el pago de beneficios marginales de empleados gerenciales conforme a una alegada "política de compensación de gastos de millaje por relocalización". De la misma forma, la señora Báez Lugo co-demandó a Foot Locker al amparo del Art. 1802 del Código Civil por daños y perjuicios como consecuencia del alegado discrimen contra el señor Serrano Rivera, su esposo.

Luego de varios trámites procesales, el 31 de julio de 2008 Foot Locker presentó una Moción de Sentencia Sumaria parcial en la que solicitó la desestimación de las reclamaciones del señor Serrano Rivera contra ellos por despido injustificado al amparo de la Ley Núm. 80, *supra*, y la reclamación de la señora Báez Lugo por daños y perjuicios al amparo del Art. 1802 del Código Civil, pues

según alegaron, ambas causas de acción estaban prescritas al momento de presentar la demanda.[3]

Una vez evaluados los hechos materiales del caso que no estaban en controversia, el Tribunal de Primera Instancia concluyó que tanto la causa de acción al amparo de la Ley Núm. 80, *supra*, que presentó el señor Serrano Rivera, y la que presentó la señora Báez Lugo al amparo del Art. 1802 del Código Civil, habían prescrito. Consecuentemente, el Tribunal de Primera Instancia desestimó con perjuicio ambas reclamaciones.[4]

Inconforme con la determinación del foro primario, el 18 de diciembre de 2008 los peticionarios presentaron un recurso de *certiorari* ante el Tribunal de Apelaciones en el que solicitaron la revocación de la decisión del Tribunal de Primera Instancia. Por entender que la determinación recurrida era correcta, el 18 de junio de 2009 el Tribunal de Apelaciones emitió una sentencia mediante la cual confirmó la determinación del Tribunal de Primera Instancia. En desacuerdo con tal decisión, el 21 de julio de 2009 los peticionarios recurrieron ante

---

[3] El 9 de septiembre de 2008 los peticionarios presentaron una Moción de Réplica a Moción de Sentencia Sumaria Parcial, a la cual Foot Locker presentó Oposición el 10 de octubre de 2008.

[4] Sentencia del Tribunal de Primera Instancia, Sala Superior de Ponce, emitida el 12 de noviembre de 2008. A pesar de que la Sentencia Parcial fue notificada en un formato OAT-704 (notificación de sentencia) la misma no concluye expresamente que no existía razón para posponer emitir sentencia en cuanto a una o más de las reclamaciones o partes hasta la resolución final del pleito, como dispone la Regla 43.5 de Procedimiento Civil de 1979. Por lo anterior, nos encontramos ante una resolución interlocutoria y no una sentencia parcial. Véanse, Medio Mundo, Inc. v. Rivera, 154 D.P.R. 315, 326-327 (2001); Torres Capeles v. Rivera Alejandro, 143 D.P.R. 300, 311-312 (1997).

este Tribunal, mediante recurso de apelación,[5] señalando los siguientes errores:

1. Erró el honorable Tribunal de Apelaciones al sostener y confirmar la determinación del Tribunal de Primera Instancia al resolver que la acción al amparo del Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, de Mayda Enid Báez Lugo estaba prescrita.

2. Erró el honorable Tribunal de Apelaciones al sostener y confirmar la determinación del Tribunal de Primera Instancia al resolver que la acción al amparo de la Ley Núm. 80 de 30 de mayo de 1976, de Ismael Serrano Rivera estaba prescrita.

Tras varios incidentes procesales, el 11 de junio de 2010 el caso de referencia quedó sometido en sus méritos para su adjudicación ante este Tribunal. Veamos la normativa aplicable a las controversias que hoy atendemos.

II

La prescripción extintiva es una institución de derecho sustantivo regulada por el Código Civil, 31 L.P.R.A. sec. 1 *et seq.* que constituye una forma de extinción de un derecho debido a la inercia en ejercer el

---

[5] Los peticionarios presentaron ante este Tribunal un recurso de apelación por entender que existía un conflicto sustancial entre la "sentencia parcial" dictada en su caso ante el Tribunal de Apelaciones y otra sentencia de dicho foro sobre cuándo comienza a correr el término prescriptivo en acciones por daños y perjuicios, al amparo del Art. 1802 del Código Civil, instada por el cónyuge de un empleado que se alega fue despedido sin justa causa y discriminado por su patrono. Sin embargo, mediante Resolución emitida el 15 de enero de 2010, este Tribunal acogió la solicitud de apelación presentada por los peticionarios como una petición de *certiorari* pues el recurso presentado no cumplió con lo dispuesto en la Regla 18 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, ni con lo dispuesto en el Art. 3.002 (b) y (c) de la Ley de la Judicatura de 22 de agosto de 2003.

mismo durante un tiempo determinado.[6] De la misma forma, Castán define la prescripción extintiva como "un modo de extinción de los derechos por la inacción del titular de los mismos durante el tiempo determinado por la ley".[7] En reiteradas ocasiones hemos expresado que con la prescripción extintiva lo que se busca es castigar la dejadez en el ejercicio de los derechos, así como los litigios difíciles de adjudicar por la antigüedad de las reclamaciones, y así evitar que una de las partes quede en estado de indefensión.[8] Conforme al Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303, la prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor.

En el caso particular de la acción por daños y perjuicios establecida en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, el término prescriptivo para entablar una reclamación al amparo de dicho estatuto es de un año desde que el agraviado supo del daño, según dispone el Art. 1868 del mismo Código, 31 L.P.R.A. sec. 5298.[9]

---

[6] Santiago v. Ríos Alonso, 156 D.P.R. 181, 188 (2002) citando a Galib Frangie v. El Vocero de Puerto Rico, 138 D.P.R. 560 (1995).

[7] Castán Tobeñas, Derecho Civil Español, Común y Foral, Tomo I, Vol. 2 (15 ed. 2007) pág. 881.

[8] Ortiz v. P.R. Telephone, 162 D.P.R. 715, 733 (2004); Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943, 950 (1991); Cintrón v. E.L.A., 127 D.P.R. 582, 588 (1990).

[9] Art. 1868, Código Civil de Puerto Rico. 31 L.P.R.A. sec. 5298.

Acerca de lo anterior, hemos expresado que el término prescriptivo para entablar una acción al amparo del Art. 1802 del Código Civil, *supra*, comienza no sólo cuando el perjudicado conoció del daño, sino además, desde que conoció quién fue el autor del mismo, y los elementos necesarios para poder ejercitar efectivamente su causa de acción.[10]

Por otro lado, la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como Ley de indemnización por despido sin justa causa, 29 L.P.R.A. sec. 185 *et seq.* establece en su sección 185(L) que "la acción para reclamar indemnización por un despido sin justa causa prescribirá por el transcurso de tres (3) años a partir de la fecha efectiva del despido mismo".

A su vez, la Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como Ley contra el discrimen en el empleo, 29 L.P.R.A. sec. 146 *et seq.* dispone respecto a la prescripción extintiva, lo siguiente:

> Cuando se presente una querella por discrimen en el Departamento del Trabajo y Recursos Humanos, el término prescriptivo de un año para iniciar la acción judicial quedará interrumpido al notificársele la querella al patrono o querellado, siempre y cuando que la notificación se efectúe dentro de dicho término prescriptivo. Dicho término prescriptivo quedará, además, en suspenso o congelado mientras la querella se continúe tramitando en el Departamento del Trabajo y Recursos Humanos y no se haya notificado al querellado la determinación del Secretario de dicho Departamento sobre la reclamación. Si mientras

---

[10] Santiago v. Ríos Alonso, 156 D.P.R. 181, 189 (2002); Colón Prieto v. Géigel, 115 D.P.R. 232, 246 (1984).

se está tramitando la reclamación en el Departamento del Trabajo y Recursos Humanos, el querellante solicita que se le permita retirar la querella o manifiesta que no desea continuar con dicho trámite, el término prescriptivo antes aludido comenzará nuevamente a partir de la fecha en que el Secretario del Trabajo y Recursos Humanos notifique de su determinación a las partes. En los demás casos, el término prescriptivo se interrumpirá con la reclamación extrajudicial, con la radicación de la acción judicial correspondiente o por el reconocimiento de la deuda por parte del patrono o de su agente autorizado.[11]

Es decir, que la Ley Núm. 100, *supra*, establece que el término prescriptivo para presentar una reclamación judicial por discrimen en el empleo es de un año, y éste será interrumpido una vez se notifique al patrono o querellado -dentro de dicho término de prescripción- sobre la presentación de la querella ante la Unidad Antidiscrimen en el Departamento del Trabajo y Recursos Humanos.[12] Además, dicho término prescriptivo estará suspendido mientras la querella continúe su trámite en la Unidad Antidiscrimen y no se haya notificado al querellado la determinación del Secretario del Departamento del Trabajo y Recursos Humanos, sobre la reclamación.

La Ley Núm. 100, *supra*, menciona que en caso de que el querellante solicite retirar la querella, o desista de continuar su trámite, el término prescriptivo de un año comenzará nuevamente desde la fecha en que se notifique la determinación del Departamento a las partes. En los demás

---

[11] 29 L.P.R.A. sec. 159.

[12] Véanse, Maldonado v. Russe, 153 D.P.R. 342, 353 (2001); Srio. del Trabajo v. F.H. Co., Inc., 116 D.P.R. 823, 824 (1986).

casos, o sea, los que no son una reclamación judicial por discrimen en el empleo al amparo de la Ley Núm. 100, *supra*, el término prescriptivo se interrumpirá por la reclamación extrajudicial, la presentación de la acción judicial correspondiente o por el reconocimiento de la deuda por parte del patrono o de su agente autorizado.

## III

En el caso ante nuestra consideración debemos determinar principalmente dos asuntos. Esto es, si la acción presentada por el señor Serrano Rivera al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como Ley de indemnización por despido sin justa causa, 29 L.P.R.A. sec. 185 *et seq.*, y la causa de acción presentada por la señora Báez Lugo al amparo del Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, estaban prescritas al momento de incoarse la demanda contra Foot Locker. A la luz de la normativa antes expuesta, resolvemos que ambas acciones estaban prescritas.

### A

Como antes discutiéramos en detalle, el señor Serrano Rivera fue despedido de su empleo el 15 de octubre de 2002. El 22 de octubre de 2002 el señor Serrano Rivera presentó una reclamación contra Foot Locker por despido injustificado ante el Negociado de Normas del Trabajo del Departamento del Trabajo y Recursos Humanos de Puerto Rico (Negociado de Normas), conforme a la Ley Núm. 80, *supra*, y

el 13 de marzo de 2003, desistió de la misma.[13]  Ese mismo día, los peticionarios remitieron una carta a Foot Locker con el propósito de interrumpir el término prescriptivo de cualquier reclamación que tuvieran disponibles como consecuencia del despido del señor Serrano Rivera. Mientras, el 28 de agosto de 2003 el señor Serrano Rivera presentó una querella contra Foot Locker ante la Unidad Antidiscrimen por alegado discrimen por edad conforme a la Ley Núm. 100, *supra*.

Luego, el 9 de marzo de 2004 los peticionarios remitieron una segunda carta a Foot Locker por medio de su representación legal con la intención de volver a interrumpir el término prescriptivo de cualquier reclamación que resultara del despido del señor Serrano Rivera.  Después de la comunicación del 9 de marzo de 2004 los peticionarios no hicieron ningún otro reclamo a Foot Locker con relación al alegado despido injustificado del señor Serrano Rivera conforme a la Ley Núm. 80, *supra*, ni acerca de la reclamación de la señora Báez Lugo al amparo del Art. 1802 del Código Civil, *supra*.  Sin embargo, el 14 de septiembre de 2006, la Unidad Antidiscrimen notificó tanto al señor Serrano Rivera como a Foot Locker sobre el cierre del caso ante dicha Unidad Antidiscrimen, y concedió el permiso que solicitó el señor Serrano Rivera para litigar su caso al amparo de la Ley Núm. 100, *supra*.

---

[13] Se notificó a Foot Locker el 7 de abril de 2003.

B

*Reclamación al amparo de la Ley Núm. 80, supra.*

La Ley Núm. 80, supra, se creó para desalentar la incidencia de despidos injustificados en el País y proveer remedios más justicieros a las personas que son despedidas sin justa causa.[14] Por eso, la Ley Núm. 80, *supra*, establece que un empleado que sea despedido sin justa causa tendrá derecho a recibir de su patrono, además del sueldo que hubiese devengado, una indemnización o mesada que se calculará como se dispone en el Art. 1.[15] Por otro lado, el Art. 2 de la Ley Núm. 80, *supra*, define lo que se entenderá como justa causa para un despido,[16] y el Art. 11 establece una presunción rebatible de que todo despido es injustificado.[17]

Acerca del término prescriptivo para presentar una reclamación al amparo de la Ley Núm. 80, *supra*, ésta dispone que "los derechos que conceden las secs. 185a a 185m de este título prescribirán por el transcurso de tres (3) años a partir de la fecha efectiva del despido mismo".[18] En cuanto al modo de interrumpir dicho término prescriptivo de tres años la Ley Núm. 80, *supra*, guarda silencio.

---

[14] *Exposición de Motivos*, Ley Núm. 80 de 30 de mayo de 1976.

[15] 29 L.P.R.A. sec. 185 (a).

[16] 29 L.P.R.A. sec. 185 (b).

[17] 29 L.P.R.A. sec. 185 (k).

[18] 29 L.P.R.A. sec. 185 (l).

En este caso, el peticionario alega que la presentación de la querella al amparo de la Ley Núm. 100, *supra*, ante la Unidad Antidiscrimen interrumpe y paraliza el término prescriptivo de tres años provisto en la Ley Núm. 80, *supra*, y por lo tanto, su causa de acción al amparo de ésta no estaba prescrita.

Como señaláramos, luego de la presentación de la querella al amparo de la Ley Núm. 100, *supra*, el 9 de marzo de 2004 los peticionarios enviaron una carta a Foot Locker, por conducto de su representación legal, que interrumpió término prescriptivo de tres años que contempla la Ley Núm. 80, *supra*, para presentar la reclamación sobre despido injustificado contra su patrono. Así, el nuevo término prescriptivo venció el 9 de marzo de 2007. Es decir, el término prescriptivo para que el señor Serrano Rivera presentara su reclamación al amparo de la Ley Núm. 80, *supra*, venció varios meses antes de que se presentara la demanda en agosto de 2007.

El argumento del peticionario en este señalamiento depende en primer lugar de que la referida querella haya interrumpido el término prescriptivo de la Ley Núm. 80, *supra*. Ahora bien, aun aceptando para efectos de argumentación que la presentación y posterior notificación a Foot Locker de la querella al amparo de la Ley Núm. 100, *supra*, ante la Unidad Antidiscrimen interrumpía la causa de acción del peticionario al amparo de ésta, de todas

formas estaba prescrita cuando se presentó la demanda.[19] En vista de lo anterior, no nos expresaremos en estos momentos acerca de si la presentación y posterior notificación oportuna de una querella al amparo de la Ley Núm. 100, *supra*, en la Unidad Antidiscrimen paraliza o no el término de tres años que provee la Ley Núm. 80, *supra*.

Por otra parte, a pesar de que en un inicio los peticionarios fueron diligentes en interrumpir el término prescriptivo de tres años establecido en la Ley Núm. 80, *supra*, luego del 9 de marzo de 2004 estos no presentaron reclamación extrajudicial alguna respecto a la acción por despido injustificado sino hasta el 15 de agosto de 2007, cuando incoaron la demanda ante el Tribunal de Primera Instancia. Por lo anterior, es forzoso concluir que la acción del señor Serrano Rivera al amparo de la Ley Núm. 80, *supra*, por despido injustificado estaba prescrita al momento de presentar la demanda.

C

*Reclamación al amparo del Art. 1802 del Código Civil contingente a la acción al amparo de la Ley Núm. 100, supra.*

Primeramente, debemos mencionar que en Santini Rivera v. Serv Air, Inc., 137 D.P.R. 1, 14 (1994) reconocimos que "los parientes de un empleado que haya sido víctima de trato discriminatorio por su patrono al amparo de la Ley Núm. 100, *supra*, tienen una causa de

---

[19] Estas expresiones no deben interpretarse como una opinión del Tribunal al respecto.

acción propia al amparo del Art. 1802 del Código Civil, *supra*, para obtener una indemnización por los daños que ellos mismos hayan sufrido a consecuencia del referido discrimen laboral". Dijimos, además, que "en tales circunstancias, **se compensarán** los daños propios sufridos por los parientes, una vez quede establecido el trato discriminatorio en cuestión".[20] En el mencionado caso de Santini Rivera v. Serv Air, Inc., *supra*, aclaramos que la Ley Núm. 100, *supra*, está dirigida únicamente a proteger los derechos de los empleados y no la situación jurídica de los parientes de estos, por lo que la Ley Núm. 100, *supra*, no es fuente de derecho para los parientes del empleado discriminado.[21]

En la misma línea de pensamiento, expresamos en Maldonado v. Banco Central Corp., 138 D.P.R. 268, 276 (1995) que la causa de acción al amparo del Art. 1802 del Código Civil, *supra*, que puede entablar el cónyuge de un empleado discriminado en su empleo es contingente a la acción que éste tiene al amparo de la Ley Núm. 100, *supra*. Así, una vez probados los tres elementos requeridos en el Art. 1802 del Código Civil, *supra*, entiéndase, la producción de un daño; un acto u omisión culposa o negligente; y la existencia de un nexo causal entre el daño y la acción u omisión de otra persona,[22] **se**

---

[20] Santini Rivera v. Serv Air, Inc., 137 D.P.R. 1, 14 (1994).

[21] Íd. en la pág. 5; Maldonado v. Banco Central Corp., 138 D.P.R. 268, 274(1995).

[22] Arroyo Lopez v. E. L. A., 126 D.P.R. 682 (1990).

**compensarán** los daños sufridos por el cónyuge como consecuencia del discrimen decretado en acción separada al amparo de la Ley Núm. 100, *supra*.[23]

Lo resuelto por este Tribunal en los casos antes citados no se puede interpretar como que el término prescriptivo de un año que tenía la señora Báez Lugo para entablar la reclamación contingente al amparo del Art. 1802 del Código Civil, *supra*, comenzaba a partir de que un Tribunal determinara que su esposo fue despedido por razones discriminatorias. Específicamente, dijimos que **se compensarán** los daños sufridos por el cónyuge como consecuencia del discrimen decretado en acción separada al amparo de la Ley Núm. 100, *supra*.[24] Nada especial dispusimos sobre cuándo debía presentarse la reclamación pues la causa de acción que le reconocimos a los parientes de un empleado que fue discriminado en su empleo bajo los términos de la Ley Núm. 100, *supra*, es una reclamación por daños y perjuicios como cualquier otra. Esto es, que desde el momento en que el agraviado adviene en conocimiento de que sufrió un daño como consecuencia de un acto culposo o negligente, y conoce quién lo causó, puede entablar su reclamación al amparo del Art. 1802 del Código Civil. Desde ese momento comienza a correr el término prescriptivo de un año provisto en el mencionado Art. 1802

_____

[23] <u>Maldonado v. Banco Central Corp.</u>, 138 D.P.R. 268, 276 (1995).

[24] Íd.

del Código Civil, *supra*, para presentar su causa de acción. Por lo tanto, el punto de partida para computar el término prescriptivo de un año para que una persona presente una causa de acción al amparo del Art. 1802 del Código Civil, *supra*, comienza desde el instante en que el titular de la acción conoce que su consorte fue discriminado en su empleo.

Del expediente surge que el 8 de julio de 2008 durante una deposición que se le tomó a la señora Báez Lugo, ella indicó que se enteró del despido del señor Serrano Rivera el mismo día que lo despidieron y entendió que el mismo fue por discrimen porque "[su] esposo siempre trabajó bien" y "todo lo dejaba por su trabajo".[25] Dijo, además, que desde ese mismo día, es decir, desde el día del despido, comenzó a sufrir daños emocionales y económicos a consecuencia del despido de su esposo. Por lo anterior, es forzoso concluir que el término prescriptivo para que la señora Báez Lugo presentara su causa de acción al amparo del Art. 1802 del Código Civil, *supra*, comenzó el 15 de octubre de 2002.

En este caso, la reclamación de la señora Báez Lugo fue una contingente y separada de la del señor Serrano Rivera al amparo de la Ley Núm. 100, *supra*, y aunque esta última fue interrumpida efectivamente con la presentación de la querella al amparo de la Ley Núm. 100, *supra*, no fue así respecto a la acción de la señora Báez Lugo al amparo

---

[25] Transcripción expedita tomada el 8 de julio de 2008 en las oficinas del bufete Goldman Antonetti & Córdova, P.S.C.

del Art. 1802 del Código Civil, *supra*. El término prescriptivo de la reclamación del señor Serrano Rivera al amparo de la Ley Núm. 100, *supra*, fue interrumpido cuando éste presentó la querella el 28 de agosto de 2003 ante la Unidad Antidiscrimen, y dicho término quedó suspendido hasta que las partes fueron notificadas sobre el cierre del caso ante la mencionada Unidad Antidiscrimen. Desde ese momento, es decir, desde el 14 de septiembre de 2006, comenzó nuevamente el término prescriptivo de la acción del señor Serrano Rivera en contra de Foot Locker al amparo de la Ley Núm. 100, *supra*.

Sin embargo, por ser la reclamación de la señora Báez Lugo una acción al amparo del Art. 1802 del Código Civil, *supra*, contingente y separada de la reclamación del señor Serrano Rivera al amparo de la Ley Núm. 100, *supra*, la acción de la señora Báez Lugo prescribió un año después de la última reclamación extrajudicial que hicieron los peticionarios el 9 de marzo de 2004. En otras palabras, la reclamación de la señora Báez Lugo al amparo del Art. 1802 del Código Civil, *supra*, prescribió el 9 de marzo de 2005; más de dos años antes de que se presentara la demanda en este caso.

IV

Por los fundamentos antes expuestos, confirmamos la determinación del Tribunal de Apelaciones por lo que se desestiman las reclamaciones presentadas por los peticionarios por despido injustificado al amparo de la

Ley Núm. 80, *supra*, y por daños y perjuicios al amparo del Art. 1802 del Código Civil, *supra*. Se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos según lo aquí resuelto.

Se dictará sentencia de conformidad.


                              Erick V. Kolthoff Caraballo
                                    *Juez Asociado*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ismael Serrano Rivera, Mayda
Enid Báez Lugo, ambos por sí
y en representación de la
Sociedad Legal de Gananciales
compuesta por ambos

AC-2009-58

    Peticionarios

       v.

Foot Locker Retail, Inc.

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 15 de septiembre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la determinación del Tribunal de Apelaciones por lo que se desestiman las reclamaciones presentadas por los peticionarios por despido injustificado al amparo de la Ley Núm. 80, *supra*, y por daños y perjuicios al amparo del Art. 1802 del Código Civil, *supra*. Se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos según lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta emitió Opinión Concurrente y Disidente. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ismael Serrano Rivera, Mayda
Enid Báez Lugo, ambos por sí y
en representación de la Sociedad
Legal de Gananciales compuesta
por ambos
          Peticionarios

              v.                        AC-2009-58

    Foot Locker Retail, Inc.
          Recurrido

Opinión Concurrente y Disidente emitida por la JUEZA ASOCIADA SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 15 de septiembre de 2011.

Estoy conforme con el análisis que hace la Opinión mayoritaria sobre el término prescriptivo aplicable a una reclamación instada al amparo del artículo 1802 del Código Civil por una persona cuyo cónyuge alegadamente ha sido víctima de un despido discriminatorio.

Sin embargo, hubiese preferido que el Tribunal aprovechara esta oportunidad para discutir los efectos que tiene la presentación oportuna de una querella bajo el artículo 3 de la Ley 100 de 30 de junio de 1959 en los términos prescriptivos de una causa de acción al amparo de la Ley 80 de 30 de mayo de 1976. Entiendo que la congelación o

suspensión del término prescriptivo de una causa de acción bajo el artículo 3 de la Ley 100, que ocurre al presentarse la querella ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos (UAD) congela, o como menos, interrumpe, el transcurso de la prescripción de la acción bajo la Ley 80. Mi posición se basa en mi convencimiento de que una causa de acción bajo la Ley 80 es un elemento sustantivo y constitutivo de la causa de acción bajo el artículo 3 de la Ley 100.

I.

La Ley 80 prohíbe y castiga los despidos injustificados.[26] El artículo 11 de la Ley establece una presunción rebatible de que todo despido es injustificado,[27] y el artículo 2 provee un listado de lo que se considerará justa causa para el despido.[28] Para prevalecer en una causa de acción bajo la Ley 80, el empleado tiene que demostrar que sufrió un despido y que éste fue injustificado.

Por su parte, la Ley 100 atiende el discrimen en el empleo.[29] Específicamente, el artículo 3 de la Ley 100 establece los elementos sustantivos de la causa de acción y el esquema probatorio a seguirse en los casos particulares de despidos discriminatorios: un despido, que éste sea injustificado y que se dé una modalidad del discrimen

---

[26] 29 L.P.R.A. §§ 185a *et seq.*

[27] 29 L.P.R.A. § 185k.

[28] 29 L.P.R.A. § 185b.

[29] 29 L.P.R.A. § 146 *et seq.*

alegado.[30] Como puede observarse, los primeros dos elementos sustantivos de una causa de acción bajo el artículo 3 de la Ley 100 son idénticos a una causa de acción bajo la Ley 80 en su totalidad.

De entrada, es notable el hecho de que la Ley 100 no define qué constituye justa causa para el despido para efectos del artículo 3, a pesar de que uno de los elementos constitutivos de la causa de acción es, precisamente, un despido sin justa causa. El historial de la Ley 100 revela, sin embargo, la intención legislativa de incorporar a ésta los criterios de la legislación que prohíbe los despidos sin justa causa. Cuando se aprobó la Ley 100 estaba vigente la Ley 50 de 20 de abril de 1949, sobre Despidos Ilegales, que fue eventualmente sustituida por la Ley 80. Es decir, el legislador de 1959 sabía que existía la Ley 50, y que ésta establecía expresamente lo que sería justa causa para el despido. Por tanto, es forzoso concluir que al no incluir en la Ley 100 una definición específica de lo que constituye justa causa, el legislador adoptó la definición provista por la Ley 50 (hoy Ley 80).[31] Así lo hemos interpretado durante casi medio siglo. Durante ese tiempo, hemos recurrido a la Ley 80 para determinar qué es justa causa bajo la Ley 100 y

---

[30] 29 L.P.R.A. 148. Nuestra jurisprudencia ha sido contra-dictoria y fluida en cuanto a este último elemento, pero, como veremos, ha habido unanimidad a través de los años en cuanto a los primeros dos.

[31] El historial legislativo de la Ley 100, si bien no hace referencia expresa a la entonces Ley 50 (hoy Ley 80), sí denota la insistencia en el elemento de 'justa causa' como ingrediente constitutivo de la causa de acción. Véase Diario de Sesiones, Senado de Puerto Rico, 30 de marzo de 1959, p. 686.

la Asamblea Legislativa no ha enmendado la Ley 100 para incluir otra definición de este término, lo cual es indicativo de la aprobación legislativa a esta práctica.[32]

En _Belk v. Martínez_,[33] analizamos la prohibición de discrimen por razón de matrimonio. Tras hacer referencia al elemento particular de esa modalidad de discrimen, que permite justificar el trato perjudicial si la relación matrimonial hace imposible el buen funcionamiento de la empresa, manifestamos que "[s]ólo así se considerará el despido justificado. Cualquier otra justificación para el despido del empleado deberá ser evaluado **conforme a los criterios** de la Ley Núm. 80".[34]

Pero la relación entre la Ley 80 y la Ley 100 no se limita a la utilización de la primera para interpretar el concepto de justa causa establecido en la segunda. El desarrollo normativo ha entrelazado ambos estatutos de tal manera que, como dice el profesor Chiesa Aponte "la ausencia de justa causa es elemento necesario pero no suficiente para activar la causa de acción [de la Ley 100]".[35] Más que un asunto de interpretación estatutaria, la relación entre la Ley 80, particularmente sus artículos 2 (definición de justa

---

[32] En varias ocasiones hemos recurrido a la definición de justa causa de la Ley 80 al discutir un caso bajo la Ley 100. Véase _Odriozola v. S. Cosmetic Dist. Corp._, 116 D.P.R. 485, 502, n. 7 (1985); _Ibáñez v. Molinos de P.R., Inc._, 114 D.P.R. 42, 50, n. 2 (1983).

[33] 146 D.P.R. 215 (1998).

[34] _Id_, p. 230 (Énfasis suplido). Véase Efrén Rivera Ramos, _Derecho Probatorio_, 68 Rev. Jur. U.P.R. 491, 512 (1999).

[35] Ernesto Chiesa Aponte, _Derecho Probatorio_, 70 Rev. Jur. U.P.R. 577, 599 (2001) (Énfasis suplido).

causa) y 11 (presunción de que el despido fue injustificado), y la Ley 100 es de naturaleza **sustantiva**, asunto que tiene mayor visibilidad en el esquema probatorio aplicable a ambas.

Para probar un caso bajo el artículo 3 de la Ley 100 hay que probar necesariamente un caso bajo la Ley 80. Por eso expresamos, en Ibáñez v. Molinos de P.R., Inc.: "Para activar la presunción se exige que el despido hubiera sido realizado sin justa causa. Bajo las definiciones del Art. 2 de la Ley de Despidos Injustificados, la [demandante] cumplió con este requisito y tenía derecho a hacer valer la presunción a su favor".[36] Como explica Chiesa Aponte, el hecho presumido del despido injustificado, que tiene su base estatutaria en la Ley 80, es "el elemento esencial de la causa de acción bajo la Ley 100".[37]

Como secuela de lo anterior, en Díaz v. Wyndham fuimos enfáticos al resolver que, por definición, un despido discriminatorio siempre será injustificado. Esto, aunque nominalmente haya justa causa para el despido: "[N]o todo despido injustificado es discriminatorio a su vez; y, por el contrario, todo despido discriminatorio sí es injustificado".[38] Lo que es más, en ese caso catalogamos los

---

[36] Ibáñez v. Molinos de P.R., Inc., supra, p. 56 (Énfasis suplido). Véase además Rodríguez Meléndez . Sup. Amigo Inc., 126 D.P.R. 117 (1990).

[37] Chiesa Aponte, Derecho Probatorio, Op.Cit., pp. 594-595 (Énfasis suplido).

[38] Díaz v. Wyndham, 155 D.P.R. 364, 387 (2001) (Énfasis suplido).

despidos en violación al artículo 3 de la Ley 100 como "despido[s] injustificado[s] **y** discriminatorio[s]".[39] Por eso es correcto afirmar que para probar una violación a la Ley 100 tiene que haberse probado necesariamente un caso bajo la Ley 80. <u>De esa forma, por definición, un caso discriminatorio siempre será injustificado, aunque el patrono haya demostrado justa causa.</u> En <u>Wyndham</u> exploramos con profundidad la interrelación entre la Ley 80 y la Ley 100:

> En síntesis, [el demandante] alegó que dicha actuación patronal constituyó un despido injustificado y discriminatorio, violando así las disposiciones de la Ley Núm. 80, *ante*, y de la Ley Núm. 100, *ante*, de manera conjunta".[40]

También son ilustradoras nuestras manifestaciones sobre qué ocurre cuando un empleado logra demostrar, en un caso bajo la Ley 100, que fue despedido sin justa causa, pero no logra demostrar el discrimen alegado y qué ocurre cuando, en efecto, el empleado logra establecer que hubo tal discrimen:

> Si luego de presentada la totalidad de la prueba, queda demostrado que no hubo ánimo o intención discriminatoria en el despido, pero el demandado no logró establecer una justificación razonable para el mismo, esto es, no probó la justa causa, el tribunal deberá concluir que el despido fue injustificado y el empleado será acreedor, exclusivamente, a los remedios establecidos en la Ley Núm. 80, *ante*. Si, por el contrario, el tribunal determina que el despido efectivamente fue discriminatorio <u>y, por ende, injustificado</u>, entonces procederá a imponer los

---

[39] *Id*, p. 391 (Énfasis suplido).

[40] *Id*, p. 368.

remedios provistos por la Ley Núm. 100, *ante*, exclusivamente.[41]

Esto reafirma la norma de que los tribunales están obligados a dar los remedios probados aunque no se hayan alegado directamente.[42] Como explica Cuevas Segarra, "toda sentencia concederá el remedio que tenga derecho la parte a cuyo favor se dicte, aun cuando ésta no haya solicitado tal remedio en sus alegaciones. Los tribunales concederán lo que en derecho proceda y no lo que se les solicite".[43] En este caso, si una persona presenta una causa de acción al amparo del artículo 3 de la Ley 100 alegando lo que hemos catalogado como un "despido injustificado y discriminatorio", pero únicamente logra demostrar (1) su despido y (2) que éste fue injustificado, corresponde otorgar los remedios de la Ley 80. Es decir, aunque no se haya reclamado específicamente bajo la Ley 80 sino únicamente bajo el artículo 3 de la Ley 100, si el demandante demuestra los elementos de una causa de acción bajo la Ley 80, como parte de su caso bajo la Ley 100, tendrá derecho al remedio de la mesada.

A esta conclusión ya habíamos llegado, con más fuerza, en Belk v. Martínez. En aquel caso, resolvimos que:

---

[41] *Id*, p. 391 (Énfasis suplido).

[42] Si bien en este caso el demandante presentó una causa de acción tanto bajo la Ley 100 como la Ley 80, nuestras expresiones en ese caso aplican a situaciones como la de autos, pues los tribunales otorgan los remedios probados y no únicamente los solicitados.

[43] José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, J.T.S. (2000), p. 704.

> [S]i luego de presentada la totalidad de la prueba queda demostrado que no hubo ánimo discriminatorio para el despido, pero el demandado no logró establecer una justificación razonable para ésta (justa causa), el tribunal deberá concluir que el despido fue injustificado y el empleado será acreedor, exclusivamente, de los remedios establecidos en la Ley Núm. 80, *supra*, de despidos injustificados.[44]

En cuanto a la interacción de los remedios bajo ambas leyes, resolvimos que, "[c]omo la Ley Núm. 100, *supra*, compensa por los daños sufridos por el empleado, <u>estos daños</u> <u>**incluyen remediar los mismos que la Ley Núm. 80, *supra*,**</u> <u>**indemniza**</u>".[45] Sobre eso abundamos como sigue: "Conceder una indemnización al amparo de dos (2) leyes distintas que tienen los <u>**mismos elementos, criterios y dependen de la**</u> <u>**misma prueba**</u>, penalizará al patrono dos (2) veces por un solo acto".[46] En cuanto las alegaciones que sirven de base para una querella bajo la Ley 80 y el artículo 3 de la Ley 100, en <u>Belk</u> también resolvimos que "[e]stas alegaciones son suficientes para establecer que el despido de Belk fue injustificado, según las definiciones del Art. 2 y la presunción del Art. [11] de la Ley Núm. 80 de despidos injustificados, *supra*. De esta forma, <u>quedó activada la</u> <u>presunción de discrimen del Art. 3 de la Ley Núm. 100,</u> <u>*supra*</u>".[47] Todo esto confirma que, para activar la presunción

---

[44] <u>Belk v. Martínez</u>, *supra*, p. 232.

[45] *Id*, p. 241 (Énfasis suplido).

[46] *Id* (Énfasis suplido).

[47] *Id*, p. 236 (Énfasis suplido).

del artículo 3 de la Ley 100, hay que alegar y fundamentar una causa de acción bajo la Ley 80.

## II.

La norma general aplicable a la interrupción de los términos prescriptivos es que el derecho castiga la inacción y la dejadez.[48] La normativa vigente sobre la interrupción y congelación (suspensión) de los términos prescriptivos aplicables a causas de acción relacionadas a la reivindicación de derechos laborales, y la interacción entre estos términos responde a este propósito y es muy abundante e ilustrativa. En Srio. de Trabajo v. F.H. Co., Inc.,[49] nos topamos con la interrogante de si, en ausencia de una disposición estatutaria a esos efectos, "la presentación de una querella por discrimen en el empleo ante la Unidad Antidiscrimen del Departamento del Trabajo interrumpe el período prescriptivo de un año para instar judicialmente las acciones que surgen bajo la [Ley 100]".[50] En este caso resolvimos que "sí interrumpe cuando la querella es notificada al querellado dentro del término prescriptivo de un año".[51] "Resolver lo contrario", manifestamos, "iría contra la política pública del Estado, pues serían pocos los trabajadores que acudirían en auxilio inicialmente al Departamento del Trabajo y Recursos Humanos por temor a que su reclamación prescribiera".[52] Igual ocurriría en casos

---

[48] De Jesús v. Chardón, 116 D.P.R. 238, 245 (1985). Véase Feliciano v. A.A.A., 93 D.P.R. 655, 660 (1966).

[49] 116 D.P.R. 823 (1986).

[50] Id, p. 824.

[51] Id.

[52] Id, pp. 827-828.

como el de autos. Si se resuelve que una querella debidamente presentada ante la UAD por Ley 100 no interrumpe los términos para instar una acción bajo la Ley 80, se desincentiva el que los trabajadores recurran a dicha entidad por miedo a perder su causa de acción base: que su despido fue injustificado.

Nuestras expresiones en Matos Molero v. Roche Products, Inc. son altamente ilustrativas para la situación de autos.[53] En aquella ocasión, nos correspondía analizar si la presentación de una querella bajo el Título VII federal ante la "Equal Employment Opportunity Commission" (EEOC) suspendía los términos para instar una causa de acción bajo la Ley 100 puertorriqueña en nuestros tribunales. Resolvimos que sí.[54] Esto, a pesar de que, a diferencia de la normativa federal, en Puerto Rico se puede ir directamente al tribunal en una demanda por violación a la Ley 100 sin tener que agotar remedio administrativo alguno o, incluso, esperar la determinación de la EEOC sobre la querella bajo el Título VII.[55]

---

[53] 132 D.P.R. 470 (1993).

[54] Matos Molero v. Roche Products, Inc., *supra*, p. 478.

[55] Cabe recordar que la relación entre la ADEA (o el Título VII en su totalidad) y nuestra Ley 100 no es de correspondencia absoluta. Por el contrario, desde Ibáñez v. Molinos de P.R., Inc., *supra*, p. 46, hemos enfatizado, precisamente, en lo diferente que son los estatutos. No obstante, en Matos Molero v. Roche Products, Inc., *supra*, resolvimos que la presentación de una causa bajo el Título VII suspende los términos bajo la Ley 100.

Nuestro fallo en <u>Matos Molero</u> fortalece la conclusión a la que se llega en la Opinión mayoritaria en el caso de autos sobre una causa de acción bajo el artículo 1802:

> Cabe señalar, además, que el que una persona reclame sus derechos al amparo de la Ley Núm. 100, *supra*, o del Título VII no precluye el que pueda reclamar al amparo de cualquier otra ley. Sobre este particular, en <u>Johnson v. Railways Express Agency</u>, 44 L.Ed. 2d 295 (1975), el Tribunal Supremo federal determinó que el recurrir al remedio provisto bajo el Título VII no afecta los reclamos en violación de derechos civiles al amparo de 42 U.S.C. sec. 1981. El Tribunal resolvió que el presentar un cargo ante la E.E.O.C. no tenía el efecto de interrumpir el término prescriptivo para presentar una acción en los tribunales, basados en los mismos hechos, al amparo de 42 U.S.C. sec. 1981, ya que ambos remedios, aunque relacionados, se consideran **separados, distintos e independientes**.[56]

> […]

> El *ratio decidendi* de estos casos es la <u>separabilidad e independencia</u> de los remedios que tiene una persona agraviada.[57]

De lo anterior surge que si un mismo evento genera diversas causas de acción, el efecto interruptor que tiene el ejercicio de una de éstas sobre las demás dependerá de la relación entre dichas causas. Ya hemos visto que, en la jurisdicción federal, la presentación de una querella bajo el Título VII no interrumpe en cuanto a la sección 1981. A igual conclusión hay que llegar en cuanto a la relación

---

[56] <u>Matos Molero v. Roche Products, Inc.</u>, *supra*, p. 483 Énfasis suplido).

[57] *Id*, p. 484 (Énfasis suplido).

entre la Ley 100 y el artículo 1802, pues son estatutos "separados, distintos e independientes". Por el contrario, al examinar la relación entre la Ley 100 y la Ley 80 hemos visto que éstas "tienen los <u>mismos elementos, criterios y dependen de la misma prueba</u>".[58] En <u>Matos Molero</u>, también hicimos referencia a la jurisprudencia federal que permite la congelación de una causa debido a la presentación de otra si éstas "están totalmente relacionadas e integradas".[59] Si la presentación de una querella bajo el Título VII interrumpe y suspende los términos prescriptivos bajo la Ley 100, a pesar de que la Ley 100 no es parte sustantiva de la causa de acción bajo el Título VII y, más importantemente, se permite recurrir directamente a un tribunal de Puerto Rico sin esperar la determinación del EEOC, es forzoso concluir que lo mismo ocurre en la relación entre la Ley 100 y la Ley 80 pues <u>no son causas "separadas e independientes" y, por el contrario, están "totalmente relacionadas e integradas"</u>.

En <u>Matos Molero</u> concluimos nuestro análisis de la siguiente manera:

> La norma que hoy adoptamos no es otra cosa que la aplicación del principio firmemente establecido en nuestro Derecho de que la interrupción es la manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo […] En el caso

---

[58] <u>Belk v. Martínez</u>, *supra*, p. 241 (Énfasis suplido).

[59] <u>Matos Molero v. Roche Products, Inc.</u>, *supra*, p. 487

de autos, la recurrente demostró cabalmente su interés en vindicar sus derechos.[60]

Por otra parte, aunque una reclamación extrajudicial con efectos interruptores, en el contexto laboral, "puede manifestarse a través de diversos actos" y "no exige una forma especial":

> [T]oda reclamación extrajudicial deberá cumplir con los siguientes requisitos para que constituya una interrupción a la prescripción: (1) debe ser oportuna, lo que exige que sea presentada dentro del término establecido; (2) el reclamante debe poseer legitimación, por lo que la reclamación debe ser ejercitada por el titular del derecho o acción cuya prescripción pretende interrumpirse; (3) el medio utilizado para realizar la reclamación debe ser idóneo, y (4) debe existir identidad entre el derecho reclamado y aquel afectado por la prescripción.[61]

En Srio. del Trabajo v. F.H. Co., Inc. decidimos que la presentación oportuna de una querella ante la UAD interrumpía los términos prescriptivos de una reclamación bajo la Ley 100 sin que hubiera un mandato legislativo a esos efectos. Posteriormente, mediante la Ley Núm. 10 del 31 de mayo de 1991, la Asamblea Legislativa enmendó la Ley 100 para "[d]isponer que, a partir de la notificación, dicho término prescriptivo quede, además de interrumpido, en suspenso o congelado (o sea, que no empezará a correr de

---

[60] Id.

[61] Id, p. 353 (Énfasis suplido). Véase además Umpierre Biascoechea v. Banco Popular, 170 D.P.R. 205 (Sentencia, 2007).

nuevo), mientras la querella se continúe tramitando en el Departamento del Trabajo y Recursos Humanos y no se haya notificado al patrono querellado la determinación del Secretario del Trabajo en cuanto a la reclamación".[62] La Asamblea Legislativa citó con aprobación nuestra Opinión al expresar que su objetivo al enmendar la Ley 100 era actuar "en beneficio de nuestra clase trabajadora".[63]

En Srio. del Trabajo v. F.H. Co., Inc., llenamos una laguna estatutaria al reconocer el efecto interruptor de la presentación de una querella ante la UAD al palio de la Ley 100 –laguna que eventualmente fue atendida por la legislatura adoptando nuestro fallo- y también lo hicimos en Matos Molero, cuando dimos idéntico efecto a la presentación de una acción bajo el Título VII en la EEOC. Igual conclusión era requerida en este caso: la oportuna presentación de una querella ante la UAD al amparo del artículo 3 de la Ley 100 sobre despidos injustificados y discriminatorios interrumpe y congela una reclamación bajo la Ley 80.

### III.

Los hechos particulares de este caso fortalecen esta conclusión. Aquí, el peticionario Serrano Rivera presentó una corta querella *pro se* ante la UAD en la que expuso: "Estuve trabajando con Foot Locker desde 8-12-78 hasta 10-15-02 y fui despedido y sustituido por una persona más joven

---

[62] Leyes de Puerto Rico 1991, p. 38.

[63] *Id.*

que yo[,] [a] pesar de un excelente trabajo en esos 24 años. Por lo que me siento discriminado por mi edad".[64] Es evidente que el peticionario alegó la existencia de un despido ("fui despedido"), que éste fue injustificado ("a pesar de un excelente trabajo en esos 24 años") y que se dio una modalidad de un discrimen prohibido ("sustituido por una persona más joven que yo"). De esta forma, es obvio que interrumpió su causa de acción bajo el artículo 3 de la Ley 100. La Opinión mayoritaria reconoce esta realidad. Pero de esta misma querella surge una alegación suficiente bajo la Ley 80: la existencia de un despido sin justa causa. Es decir, a lo mínimo, están presentes los elementos identificados en Maldonado v. Russe, pues evidentemente hay "identidad de propósitos" entre ambas reclamaciones, tanto así que para reclamar la protección de una disposición estatutaria (Ley 100) necesariamente tiene que reclamarse la violación a la otra (Ley 80). Sin duda, se trata de un trabajador despedido que está activamente vindicando sus derechos. No estamos ante un empleado que se cruzó de brazos. Por el contrario, confió en la política pública que le incentivó a presentar su querella ante la UAD. Resolver que su reclamación bajo la Ley 100 está viva pero su reclamación bajo la Ley 80 está prescrita derrotaría la política pública e ignoraría el desarrollo jurisprudencial y legislativo.

IV.

---

[64] Apéndice Alegato de la Parte Apelada, p. 8.

En el caso de autos, la Opinión mayoritaria no analiza qué efectos, si algunos, tendría la oportuna presentación de una querella bajo el artículo 3 de la Ley 100 sobre una causa de acción al palio de la Ley 80. En vez, dispone que "no nos expresaremos en estos momentos acerca de si la presentación y posterior notificación oportuna de una querella al amparo de la Ley Núm. 100, *supra*, en la Unidad Antidiscrimen paraliza o no el término de tres años que provee la Ley Núm. 80, *supra*".[65] Entiendo que nada impedía que aprovecháramos este momento para atender esta interrogante, independientemente de si concluyéramos que dicha presentación congelaba, interrumpía o no tenía efecto alguno sobre un caso bajo la Ley 80. En mi caso particular y por lo anteriormente expresado, concluyo que dicha presentación congela, o a lo mínimo interrumpe, la causa de acción al palio de la Ley 80. Por eso, en este caso, la demanda del señor Ismael Serrano Rivera por despido injustificado no estaba prescrita. Confío que en un futuro cercano, cuando el Tribunal vuelva a toparse con esta interrogante, proveerá una contestación adecuada que dé plena eficacia a la política pública vigente en nuestro país de erradicar el discrimen en el empleo y castigar los despidos caprichosos.


                                        Liana Fiol Matta
                                        Jueza Asociada

---

[65] Opinión mayoritaria, p. 14.