Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| SAMUEL SANTIAGO SANTIAGO Y OTROS<br><br>Apelantes<br><br>v.<br><br>JESÚS CASTRO SANTIAGO Y OTROS<br><br>Apelados<br><br>v.<br><br>DOMINO´S CORP. Y OTROS<br><br>Apelados | KLAN202300178 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: SJ2017CV01263 (806)<br><br>Sobre: Daños y Perjuicios |
| SAMUEL SANTIAGO SANTIAGO Y OTROS<br><br>Apelados<br><br>v.<br><br>JESÚS CASTRO SANTIAGO Y OTROS<br><br>Apelantes<br><br>v.<br><br>DOMINO´S CORP. Y OTROS<br><br>Apelados | KLAN202300195 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: SJ2017CV01263 (806)<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Salgado Schwarz.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de abril de 2023.

En un caso de daños y perjuicios por un accidente de tránsito, el Tribunal de Primera Instancia ("TPI"), por la vía sumaria, desestimó, por prescripción, las reclamaciones contra una aseguradora presentadas por los demandantes y por un chofer

demandado por vía de una demanda contra tercero. Según se explica en detalle a continuación, procede la desestimación de la apelación del chofer, pues la misma no se notificó a todas las partes del caso; en cuanto a los demandantes, concluimos que los términos de la póliza no le permiten reclamar contra la aseguradora.

I.

En marzo de 2017, el Sr. Samuel Santiago Santiago y la Sa. Carmen Pagán Arroyo (los "Demandantes") presentaron una acción de daños y perjuicios en conexión con un accidente de tránsito ocurrido el 8 septiembre de 2016, aproximadamente a las 7:20 pm. Alegaron que, mientras cruzaban la Ave. San Claudio en Cupey, fueron atropellados por un vehículo (el "Vehículo") manejado por el Sr. Jesús Castro Santiago (el "Chofer").

Esta acción se presentó contra el Chofer y contra Domino's Corp. ("Dominos"), quien se alegó era el patrono del Chofer. También se incluyó como demandados a Juan Doe y Juana Doe. Según se alegó en la demanda:

[…]

5. El codemandado, Sr. Castro Santiago, al momento de ocurrir el accidente, se encontraba en gestiones de trabajo (entregando pizza) que beneficiaban directamente a su patrono, el codemandado Domino's Corp.

6. La parte demandada tenía expedida una póliza de seguros que, de prevalecer la parte demandante en su causa de acción, cubre el tipo de reclamación que nos ocupa.

[…]

9. Por desconocer de su existencia y verdadero nombre, hemos denominado a Juan Doe y Juana Doe a cualquier persona natural o jurídica que pudiera tener alguna responsabilidad por los hechos alegados en esta demanda.

En junio de 2017, el TPI le anotó la rebeldía a Dominos.

Mientras tanto, por los mismos hechos y en solicitud de los mismos remedios, los Demandantes presentaron, en agosto de 2017, la acción de referencia (la "Demanda") en contra del Chofer, Juan Doe y Juana Doe. En cuanto a estos últimos, se alegó lo mismo que en la primera acción. En septiembre de 2017, los Demandantes enmendaron la Demanda para incluir al Sr. Gilberto Castro de Armas y la Sra. Madeline Santiago Morales; se alegó que estos eran los padres del Chofer, quien era menor de edad al momento de los hechos.

En febrero de 2018, el Chofer contestó la Demanda y reconvino.

En marzo del mismo año, el Chofer presentó una *Demanda Contra Tercero* para traer al pleito a: Dominos, la Compañía de Seguros ABC e Integrand Assurance Company ("Integrand"). Se alegó que, al momento de los hechos, el Demandado realizaba funciones para Dominos y que este era su patrono. También se alegó que Integrand tenía expedida una póliza de seguros que incluía al Vehículo.

En mayo de 2018, el TPI consolidó ambas acciones e instruyó a las partes a que presentaran todos los documentos y mociones en el caso posterior (SJ2017CV01263).

El 31 de julio de 2018 Dominos fue emplazado personalmente.[1]

---

[1] Véase Entrada núm. 23 del Expediente Electrónico del Sistema Unificado de Manejo y Administración de Casos ("SUMAC") y Entrada núm. 48. Véase, además, SUMAC Entrada núm. 43, donde surge que el 15 de octubre de 2018, el TPI notificó la siguiente *Orden*:

> No obra en sistema ni en el expediente judicial dirección alguna de la tercera Demadada, Domino's Corp. Surge que fue emplazada personalmente. Ante la falta de dicha información, el Tribunal está impedido en notificar determinaciones a dicha parte. Se le conceden 10 días a la tercera demandante para proveer dirección física o postal de la tercera demandada, Domino's Corp.

El 24 de octubre de 2018, el Chofer cumplió con lo ordenado e informó que la dirección de Domino's Corp. es: PMB 519 138 Avenida Winston Churchill San Juan P.R. 00926, con número de teléfono (787) 754- 0236. Véase SUMAC Entrada núm. 45.

El 31 de agosto de 2018, los Demandantes solicitaron en el caso más viejo autorización para enmendar la demanda con el fin de incluir a Integrand como demandado adicional e incluir la siguiente alegación:

> 6. La parte codemandada Integrand Ass. Co. tenía expedida una póliza de seguros que, de prevalecer la parte demandante en su causa de acción, cubre el tipo de reclamación que nos ocupa.

En septiembre de 2018, Integrand presentó una *Moción Solicitando Desestimación de Demanda Contra Tercero*. Sostuvo que: 1) la póliza núm. AP 28092767 (la "Póliza"), expedida a favor de Gaither International ("Gaither"), no provee cubierta para la reclamación de autos; 2) el Chofer no es asegurado bajo la Póliza; 3) el Chofer no era empleado de Gaither, por lo que no existe responsabilidad vicaria; 4) Gaither no tiene obligación legal de emitir pago por los daños alegados en la Demanda; 5) el empleado dueño del Vehículo, Oscar Fernando Castro de Armas, no tiene cubierta ya que la Póliza claramente establece que no cualifica como asegurado si el empleado de Gaither es dueño del Vehículo, y que este tampoco aparece como asegurado adicional; 6) el Chofer no cualifica como asegurado bajo la póliza de Gaither; y 7) el Vehículo era utilizado como herramienta de trabajo para Dominos, pero no para Gaither.

En noviembre de 2018, el TPI también notificó una *Resolución* mediante la cual *motu proprio* le anotó la rebeldía a Dominos por no haber presentado la correspondiente alegación responsiva, ni haber solicitado una prórroga para presentar su alegación responsiva, dentro del término reglamentario aplicable.[2]

El 19 de diciembre de 2018, Integrand contestó la *Demanda Contra Tercero*.

---

[2] Véase SUMAC Entrada núm. 48.

Tras varias incidencias procesales, el 19 de mayo de 2021, la Asociación de Garantía de Seguros Misceláneos de Puerto Rico (la "Aseguradora"), sucesor en interés de Integrand, presentó una *Contestación Enmendada a la Demanda Contra Tercero*, la que fue permitida por el TPI. En esencia, negó responsabilidad por los hechos de la Demanda y levantó la defensa de prescripción.[3]

El 24 de febrero de 2022, las partes presentaron el *Informe de Conferencia con Antelación al Juicio* en el que estipularon hechos, delimitaron sus teorías y defensa, y estipularon la Póliza.

El 28 de febrero de 2022, la Aseguradora presentó una *Moción de Sentencia Sumaria* (la "Moción"). Reiteró que la Póliza no provee cubierta para la reclamación de autos porque el Chofer no figuraba como persona autorizada bajo la Póliza; además, arguyó que la reclamación en su contra estaba prescrita, al haberse presentado en el 2018, cuando el accidente ocurrió el 8 de septiembre de 2016.[4]

Los Demandantes se opusieron a la Moción; arguyeron que la Póliza incluía al Vehículo que conducía el Chofer y que, por tanto, la Aseguradora debe responder. En cuanto a la prescripción, plantearon que esa defensa fue renunciada porque no se incluyó al contestarse inicialmente la *Demanda Contra Tercero*.[5]

Por su parte, el Chofer también se opuso a la Moción; sostuvo que, al momento de expedirse la Póliza, Integrand tenía conocimiento de que el Vehículo no estaba a nombre de Gaither. Arguyó que en la Póliza se incluyeron varios vehículos para los cuales Gaither no era el titular registral y que, por medio de la Póliza, Integrand representó que existía cubierta para los vehículos. En cuanto a la prescripción, solo adujo que Integrand fue oportunamente demandada.[6]

---

[3] Véase Apéndice del recurso KLAN202300178, págs. 55-56.
[4] *Íd.*, págs. 106-126.
[5] *Íd.*, págs. 191-202.
[6] *Íd.*, págs. 231-244.

El 19 de mayo de 2022, las partes presentaron el *Informe de Conferencia con Antelación a Juicio Enmendado* (el "Informe").[7] El 24 de mayo, se celebró la *Conferencia con Antelación a Juicio y Vista Transaccional* en la cual el TPI aprobó el Informe y el TPI señaló el Juicio en su Fondo para el 22, 23 y 26 de junio.[8]

Posteriormente, la Aseguradora presentó una moción informativa suplementando su solicitud de sentencia sumaria[9] y el Chofer presentó su escrito en oposición.[10]

Mediante una Sentencia Parcial notificada el 11 de octubre de 2022 (la "Sentencia"), el TPI desestimó la reclamación contra la Aseguradora. El TPI concluyó que la misma estaba prescrita.[11]

Inconformes, el 26 de octubre, los Demandantes solicitaron la reconsideración de la Sentencia, así como determinaciones de hechos y de derecho adicionales; la Aseguradora se opuso.

Mediante una *Resolución* notificada el 14 de noviembre, el TPI denegó la reconsideración solicitada.

No obstante, el 8 de diciembre, los Demandantes advirtieron al TPI que la Sentencia no había sido notificada a Dominos[12], por lo cual, ese mismo día, el TPI notificó nuevamente la *Sentencia*.[13]

Poco después, el 16 de diciembre, los Demandantes informaron al TPI que la dirección utilizada una semana antes para notificar la Sentencia a Dominos tenía un error porque no se incluyeron los últimos 4 dígitos del código postal. Además, suplieron dos direcciones adicionales de Dominos que informaron haber encontrado; una de ellas expusieron que surgía de la página *web* del Servicio Postal de Estados Unidos.[14] Ese mismo día, el TPI

---

[7] Véase SUMAC Entrada núm. 172.
[8] Véase SUMAC Entrada núm. 174.
[9] Véase Apéndice del recurso KLAN202300178, págs. 292-301.
[10] *Íd.*, págs. 302-304.
[11] Véase Apéndice del recurso KLAN202300178, págs. 307-319.
[12] Véase SUMAC Entrada núm. 196.
[13] Véase SUMAC Entrada núm. 197 y Entrada núm. 190, Notificación Versión 2.
[14] Véase SUMAC Entrada núm. 198 y Anejo 1.

ordenó notificar nuevamente la *Sentencia* a todas las direcciones provistas en la moción.[15]

El 29 de diciembre, los Demandantes solicitaron la reconsideración de la Sentencia y determinaciones de hechos y de derecho adicionales. La Aseguradora se opuso a la solicitud de reconsideración. El 1 de febrero, el Chofer indicó al TPI que se unía a lo planteado por los Demandantes.

Mediante una Resolución notificada el 2 de febrero, el TPI denegó la solicitud de reconsideración y de determinaciones de hechos y de derecho adicionales presentada por los Demandantes y a la cual se había unido el Chofer.

El 6 de marzo (lunes), los Demandantes presentaron uno de los recursos que nos ocupa (KLAN202300178); plantean que erró el TPI:

1. al no dictaminar que tanto la contestación de Integrand Assurance Co., como la posterior contestación de la Asociación de Garantía de Seguros Misceláneos de Puerto Rico a la demanda contra terceros presentada en su contra, tuvo el efecto jurídico de enmendar automáticamente la demanda, sin necesidad que la parte demandante apelante tuviese que hacer nada. Mercado Figueroa v. Municipio de San Juan, 2015 TSPR 14.

2. al declarar que la causa de acción del demandante contra tercero, Sr. Jesús Castro, de incumplimiento de contrato de la Asociación de Garantía de Seguros Misceláneos de Puerto Rico por haberle negado defensa y cubierta bajo la póliza de Integrand que aseguraba el vehículo que él conducía y que impactó a los demandantes apelantes estaba prescrita.

3. al no pasar juicio respecto a la "Moción Solicitando Autorización del Honorable Tribunal para Enmendar la Demanda", que fue presentada el 31 de agosto de 2018, en la Secretaría del TPI, bajo los dos números del presente caso: KDP2017-0306 y SJ2017CV01263.

---

[15] Véase SUMAC Entrada núm. 199 y Entrada núm. 190, Notificación Versión 3.

Ese mismo día, el Chofer presentó el otro recurso que nos ocupa (KLAN202300195); señala que erró el TPI al determinar que la causa de acción en contra de la Aseguradora está prescrita.

Mediante una *Resolución* emitida el 8 de marzo consolidamos ambos recursos.

La Aseguradora se opuso a ambos recursos de apelación. Resolvemos.

II.

En cuanto al recurso KLAN202300195, concluimos que procede su desestimación, pues el mismo no fue notificado a Dominos, quien es parte en este caso.

La jurisdicción es la autoridad que tiene el tribunal para atender en los méritos una controversia. *Maldonado v. Junta de Planificación*, 171 DPR 46, 55 (2007). La jurisdicción no se presume y los tribunales no tienen discreción para asumirla donde no la hay. *Íd*. Los tribunales debemos ser celosos guardianes de nuestra jurisdicción. *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882 (2007). Los asuntos jurisdiccionales son privilegiados y deben resolverse con preferencia a cualquier otro asunto planteado. *Carattini v. Collazo Systems Analysis, Inc.*, 158 DPR 345, 355 (2003).

Para el perfeccionamiento adecuado de un recurso presentado ante el foro apelativo intermedio es necesario la oportuna presentación y la notificación del escrito a las partes apeladas. *Montañez Leduc v. Robinson Santana*, 198 DPR 543 (2017). En tal contexto, la Regla 13 (A) de nuestro Reglamento, 4 LPRA Ap. XXII-B R. 13(A), establece que el término para presentar el recurso de apelación será dentro "de treinta (30) días contados desde el archivo en autos de copia de la notificación de la sentencia". Dicho término es de carácter jurisdiccional. *Íd*; véase también la Regla 52.2(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 52.2(a). Como sabemos, un término jurisdiccional es fatal, improrrogable e insubsanable.

*Martínez Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). Por ende, no puede acortarse, ni extenderse. *Torres v. Toledo*, 152 DPR 843, 851 (2000).

Por su parte, la Regla 13 (B)(1) del Reglamento del Tribunal de Apelaciones establece que la parte apelante deberá notificar a las partes el recurso de apelación y los Apéndices dentro del término dispuesto para la presentación del recurso, ello con independencia de si comparecieron a los procedimientos, o si se efectuó una declaración de rebeldía en cuanto a su persona. Dicho término es de estricto cumplimiento. A tales efectos, la parte apelante deberá certificar con su firma en el recurso, por sí o por medio de su representación legal, la fecha en que se efectuó la notificación. 4 LPRA Ap. XXII-B, R. 13 (B)(1).

Cuando se trata de un término de cumplimiento estricto, los tribunales no están atados al automatismo que conlleva un requisito de carácter jurisdiccional y pueden, por lo tanto, proveer el remedio que estimen pertinente, extendiendo el término según las circunstancias. *Rojas v. Axtmayer Ent., Inc.*, 150 DPR 560, 564 (2000). Sin embargo, la justa causa tiene que ser acreditada **con explicaciones concretas y particulares** que permitan al juzgador concluir que hubo una excusa razonable para la tardanza. *Febles v. Romar*, 159 DPR 714, 720 (2003); *Soto Pino v. Uno Radio Group*, 189 DPR 84, 92-93 (2013).

Por su parte, la Regla 83 (C) de nuestro Reglamento, 4 LPRA Ap. XXII-B R. 83 (C), permite la desestimación de un recurso de apelación por falta de jurisdicción.

En este caso, no surge del expediente que el Chofer haya notificado su recurso a Dominos. De todas maneras, le concedimos al Chofer un término para que mostrase causa por la cual no debíamos desestimar el recurso por ausencia de notificación a Dominos y a la Aseguradora. Sin embargo, al comparecer al

respecto, el Chofer únicamente acreditó haber notificado su recurso a los Demandantes y a la Aseguradora, pero no acreditó, ni aseveró, haber notificado el recurso a Dominos.

Al no haberse acreditado la notificación del recurso a Dominos, y al no haberse siquiera intentado aducir algún tipo de justa causa para dicha omisión, nos vemos en la obligación de desestimar el mismo.

Por otra parte, y contrario a lo planteado por la Aseguradora, no procede la desestimación del recurso presentado por los Demandantes. Aunque la Aseguradora plantea que el apéndice del recurso es incompleto, la norma es que ello no nos obliga a desestimar. Tampoco tiene razón la Aseguradora al plantear que el término para apelar comenzó cuando el TPI intentó por primera vez notificar la Sentencia a Dominos. En las circunstancias particulares de este caso, consideramos razonable la determinación del TPI de que era necesaria una segunda notificación a dicha parte, por lo cual el término para solicitar reconsideración y apelar comenzó a transcurrir a partir de esa segunda notificación.

III.

El mecanismo de sentencia sumaria procura, ante todo, aligerar la tramitación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo. *Véase Rodríguez García v. Univ. Carlos Albizu,* 200 DPR 929 (2018); *Ramos Pérez v. Univisión,* 178 DPR 200.

La Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36, rige el proceso mediante el cual una parte puede solicitar al tribunal que dicte sentencia sumaria a su favor. Cuando cualquier parte solicite que el pleito sea resuelto por la vía sumaria, deberá demostrar "la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia

sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación". 32 LPRA Ap. V, Rs. 36.1 y 36.2.

El criterio rector al momento de considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales y pertinentes, según alegados por las partes en sus respectivas solicitudes y/o oposiciones, y que sólo reste aplicar el derecho. Véanse *Rodríguez García*, 200 DPR a la pág. 941; *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 661 (2017); *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 594-595 (2013).

El TPI no debe dictar sentencia sumaria cuando: (1) *existen hechos materiales y esenciales controvertidos*; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) *surja de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material y esencial*; o (4) como cuestión de derecho, no procede. *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586 (2013); *González v. Multiventas*, 165 DPR 873, 889 (2005); *PFZ Properties, Inc. v. General Accident Insurance Co.*, 136 DPR 881, 913–914 (1994).

IV.

"La prescripción extintiva es una institución de derecho sustantivo que extingue el derecho a ejercer determinada causa de acción". *Maldonado Rivera v. Suarez y otros*, 195 DPR 182, 192 (2016). En otras palabras, la prescripción extintiva es materia de naturaleza sustantiva, regida por nuestro Código civil. *SLG García–Villega v. ELA et al*, 190 DPR 799, 812 (2014); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365 (2012); 31 LPRA ant. sec. 5291.

La prescripción extintiva "tiene como propósito castigar la inercia y estimular el ejercicio rápido de las acciones, puesto que no se debe exponer a las personas toda la vida, o por un largo tiempo, a ser demandadas". *SLG Haedo-López v. SLG Roldán-Rodríguez*, 203 DPR 324, 336-337 (2019) (Citas omitidas). Véase, además, *COSSEC*

*et al. v. González López et al.*, 179 DPR 793, 806 (2010). "Al respecto, transcurrido el periodo de tiempo establecido por ley sin reclamo alguno por parte del titular del derecho, se origina una presunción legal de abandono". *Fraguada Bonilla*, 186 a la pág. 374.

El término prescriptivo para presentar una reclamación, al amparo del Artículo 1802 del Código civil, *supra*, es de un año desde que el agraviado supo, o debió saber con razonable diligencia, del daño. Artículo 1868 del Código civil, 31 LPRA ant. sec. 5298; *SLG Serrano-Báez v. Foot Locker*, 182 DPR 824, 832 (2011).

Así mismo, el término prescriptivo, cuando no exista disposición especial que indique alguna otra cosa, comenzará a transcurrir desde el día en que pudo ejercitarse la misma. Art. 1869 del Código civil, 31 LPRA ant. sec. 5299. Para que comience a transcurrir el término, es necesario que la persona perjudicada conozca del daño sufrido, quién se lo ha causado y los elementos necesarios para poder ejercitar efectivamente su causa de acción. *Fraguada Bonilla*, 186 a la pág. 374 (Citas omitidas).

Ahora bien, "si el desconocimiento [de los elementos de la causa de acción] se debe a falta de diligencia, entonces no son aplicables estas consideraciones sobre la prescripción". *Íd.*; *COSSEC et al., supra*. A estos efectos, se le exige a la parte afectada la diligencia de una persona prudente y razonable, de manera que descubra los elementos necesarios para su causa de acción en un tiempo razonable para, así, cumplir con los propósitos de la prescripción. Véase, *Vera v. Dr. Bravo*, 161 DPR 308, 330 (2004). Comenzado a transcurrir el término, el Artículo 1873 del Código civil establece que "[l]a prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor". 31 LPRA ant. sec. 5303.

V.

El Código civil establecía una presunción de mancomunidad en las obligaciones, salvo que se pactara expresamente la solidaridad. 31 LPRA ant. sec. 3101. En cuanto a las obligaciones extracontractuales civiles que surgen de la culpa o negligencia, el Código civil no disponía si habría de regir la solidaridad o la mancomunidad. Ante esta laguna, se estableció que, cuando exista pluralidad de co-causantes de un daño indivisible, estos responderán solidariamente ante el agraviado. *García v. Gobierno de la Capital*, 72 DPR 138 (1951). Por lo que el perjudicado podrá recobrar de cada causante la totalidad de la deuda que proceda.

En materia de la prescripción, el Código civil disponía que: "[l]a interrupción de la prescripción de acciones en las obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores y deudores". 31 LPRA ant. sec. 5304. No obstante, en acciones de daños y perjuicios, cuando coincide más de un causante de un daño, el agraviado ordinariamente deberá interrumpir la prescripción en relación con cada co-causante por separado, dentro del término de un año establecido por el Artículo 1868 del Código civil, *supra*, si interesa conservar su causa de acción contra cada uno de ellos. Por ello, la presentación oportuna de la demanda contra un presunto co-causante ordinariamente no tiene el efecto de interrumpir el término prescriptivo contra el resto de los alegados co-causantes del daño. *Fraguada Bonilla*, *supra* (Citas omitidas).

No obstante, recientemente se aclaró que, en atención a la particular naturaleza de la relación entre quien responde vicariamente por los actos de otra persona, la reclamación por daños contra uno de ellos interrumpe en cuanto al otro. *Pérez et al. v. Lares Medical et al*, 207 DPR 965 (2021).

En efecto, entre un patrono y su empleado existe una relación de **solidaridad propia** que se distingue de la solidaridad impropia

que de ordinario existe entre los co-causantes de un daño extracontractual. En otras palabras, cuando aplica la responsabilidad vicaria que se establece bajo el Artículo 1803 del Código civil, *supra*, no es de aplicación la solidaridad impropia establecida en *Fraguada Bonilla, supra*, y su progenie.

VI.

El Código de Seguros de Puerto Rico define el seguro como "el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 148 (2021), citando el Artículo 1.020 del Código de Seguros de Puerto Rico, 26 LPRA sec. 102. "[D]ebido a que la industria de los seguros está revestida del más alto interés público, es reg[lament]ada extensamente por el Estado". *Carpets & Rugs v. Tropical Reps*, 175 DPR 614, 632 (2009) (Citas omitidas); véase, por ejemplo, 26 LPRA secs. 1-10377. El "negocio de seguros está investido de un alto interés público debido al papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos". *RJ Reynolds v. Vega Otero*, 197 DPR 699, 706 (2017); *Natal Cruz v. Santiago Negrón*, 188 DPR 564, 575 (2013). Este alto interés surge "de la extraordinaria importancia que juegan los seguros en la estabilidad de nuestra sociedad". *RJ Reynolds, supra*; *SLG Francis-Acevedo v. SIMED*, 176 DPR 372, 384 (2009). Lo anterior, toda vez que el contrato de seguro "permite igualmente a las personas, como a los negocios, proteger sus recursos al transferir el impacto monetario de ciertos riesgos a cambio del pago de una prima". *Feliciano Aguayo*, 207 DPR a la pág. 150.

Ahora bien, según establece el Código de Seguros de Puerto Rico, este tipo de contrato debe ser interpretado "globalmente, a base del conjunto total de sus términos y condiciones, según se

expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud que sean añadidos a la póliza para formar parte de ésta". *Íd.*, citando el Artículo 11.250 del Código de Seguros de Puerto Rico, 26 LPRA. sec. 1125.

Por ser un contrato de adhesión, el mismo debe ser interpretado liberalmente a favor del beneficiario. Sin embargo, "si los términos del contrato de seguro son claros, específicos y no dan margen a ambigüedades o diferentes interpretaciones, se hará valer la clara voluntad de las partes". *Echandi Otero v. Stewart Title*, 174 DPR 355, 369-370 (2008).

En cuanto a los endosos de exclusión de cubierta, el Código de Seguros dispone que todo asegurador debe "[p]roveer al consumidor una orientación clara y completa sobre la cubierta, beneficios, límites y exclusiones de la póliza de seguros gestionada por su conducto, así como de los deberes y obligaciones de éste como asegurado bajo la misma". 26 LPRA sec. 949c (1).

Las cláusulas *de exclusión* se interpretarán restrictivamente, de modo que se cumpla con los propósitos de cubierta al asegurado. En efecto, "las exclusiones se han de interpretar restrictivamente a favor del asegurado, para así cumplir con el propósito de todo seguro de ofrecer la mayor protección a la persona asegurada." (Citas omitidas). *Monteagudo Perez v. E.L.A.*, 172 DPR 12, 21 (2007). Claro está, "si las cláusulas de exclusión son claras y aplican a determinada situación, la aseguradora no será responsabilizada por aquellos riesgos expresamente excluidos". *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 899-900 (2012); *Integrand Assurance v. CODECO et al.*, 185 DPR 146, 162 (2012); *Jiménez López et al. v. SIMED*, 180 DPR 1, 10, 11 (2010); *Molina v. Plaza Acuática*, 166 DPR 260, 267-268 (2005).

Respecto al alcance de la responsabilidad del asegurador frente al perjudicado, el Artículo 20.010 del Código de Seguros de

Puerto Rico, dispone que "[e]l asegurador que expidiere una póliza asegurando a una persona contra daños o perjuicios, [...] será responsable cuando ocurriere una pérdida cubierta por dicha póliza, y el pago de dicha pérdida por el asegurador hasta el grado de su responsabilidad por la misma, con arreglo a la póliza, no dependerá del pago que efectúe el asegurado en virtud de sentencia firme dictada contra él con motivo del suceso, ni dependerá de dicha sentencia". 26 LPRA sec. 2001.

En cuanto a la naturaleza de la relación jurídica entre un asegurador y un asegurado esta es de carácter contractual. Pues se rige por lo pactado en el contrato de seguros, que es ley entre las partes. *Gen. Accid. Ins. Co. P.R. v. Ramos*, 148 DPR 523, 531 (1999). Véase, además, *Echandi Otero*, 174 DPR a la pág. 355. En atención a lo anterior, se ha resuelto que "[p]ara que exista solidaridad entre una compañía aseguradora y el asegurado, ello debe surgir claramente del contrato de seguros. Dicha solidaridad debe haberse pactado expresamente o, al menos, debe surgir claramente del contenido del contrato que la relación entre las partes se constituyó con tal carácter". *Gen. Accid. Ins. Co. P.R.*, 148 DPR a la pág. 537, citando a *Torrellas v. Sucn. Torellas*, 57 DPR 501 (1940). Así pues, es en virtud de dicha relación contractual, que la aseguradora viene obligada a indemnizar y proteger a su asegurado en caso de producirse el suceso incierto previsto. *S.L.G. Francis-Acevedo*, 176 DPR a la pág. 384; *Monteagudo Pérez*, 172 DPR a la pág. 20; *Díaz Ayala v. ELA*, 153 DPR 675, 690 (2001).

Por otro lado, el Código de Seguros dispone distintas maneras en que una persona perjudicada puede solicitar el resarcimiento correspondiente contra un asegurador o un asegurado. El Artículo 20.030 del Código de Seguros de Puerto Rico, provee lo siguiente:

> (1) La persona que sufriere los daños y perjuicios tendrá, a su opción, una acción directa contra el asegurador conforme a los términos y

> limitaciones de la póliza, acción que podrá ejercitar contra el asegurador solamente o contra éste y el asegurado conjuntamente. La acción directa contra el asegurador se podrá ejercer solamente en Puerto Rico. La responsabilidad del asegurador no excederá de aquella dispuesta en la póliza, y el tribunal deberá determinar no solamente la responsabilidad del asegurador, si que también la cuantía de la pérdida. Cualquier acción incoada conforme a esta sección estará sujeta a las condiciones de la póliza o contrato y a las defensas que pudieran alegarse por el asegurador en acción directa instada por el asegurado.
>
> (2)  En una acción directa incoada por la persona que sufriere los daños y perjuicios contra el asegurador, éste está impedido de interponer aquellas defensas del asegurado basadas en la protección de la unidad de la familia u otras inmunidades similares que estén reconocidas en el ordenamiento jurídico de Puerto Rico.
>
> (3)  Si el perjudicado entablara demanda contra el asegurado solamente, no se estimará por ello que se le prive, subrogándose en los derechos del asegurado con arreglo a la póliza, del derecho de sostener acción contra el asegurador y cobrarle luego de obtener sentencia firme contra el asegurado.  23 LPRA sec. 2003.

Conforme al Artículo 20.030 del Código de Seguros de Puerto Rico, cuando una persona alega que ha sufrido daños y perjuicios causados por las acciones u omisiones culposas o negligentes de un asegurado, puede encausar su acción de tres formas distintas: (1) demandar al asegurador; (2) demandar al asegurado, o (3) demandar al asegurado y su asegurador conjuntamente. *Savary et al. v. Mun. Fajardo et al.*, 198 DPR 1014, 1024 (2017); *SLG Albert-García v. Integrand Asrn.*, 196 DPR 382, 393 (2016); *Neptune Packing Corp. v. Wackenhut Corp.*, 120 DPR 283, 289 (1988).  Esta acción se caracteriza por ser "independiente, distinta y separada" de la reclamación que tiene disponible el promovente en contra del causante de sus daños.  *Savary*, 198 DPR a la pág. 1024; *Ruiz v. New York Dept Stores*, 146 DPR 353, 364 (1998). Véase, además, *SLG Albert-García, supra.*

Cuando la persona se dirige contra el asegurado solamente lo hace sin perjuicio del derecho del perjudicado de instar una acción posterior contra el asegurador y reclamarle a éste el pago de la indemnización a que tiene derecho por sentencia firme contra el asegurado. *Neptune Packing Corp.*, 120 DPR a la pág. 290. Véase, además, *Ruiz*, 146 DPR a la pág. 367-368.

La elección del mecanismo procesal para presentar una acción judicial en contra de un asegurador o asegurado repercutirá en cuanto a los requisitos que el tercero perjudicado tendrá que cumplir para ser compensado por los daños sufridos. *Menéndez, Velázquez*, 203 DPR a la pág. 907. En la relación entre asegurado, asegurador y tercero perjudicado, el vínculo jurídico del tercero perjudicado y el asegurador solo surge en dos (2) escenarios: ante una acción directa contra el asegurador o ante una acción conjunta en contra de un asegurador y su asegurado. Véase, por ejemplo, *Almonte de Mejías v. Díaz*, 86 DPR 111 (1962).

Cuando un tercero perjudicado solicita indemnización al asegurador solamente, su derecho está predicado en los términos de la póliza entre el asegurado y el asegurador. *SLG Albert García, supra*, pág. 393. Al respecto, en *Trigo v. The Travelers, Ins. Co.*, 91 DPR 868 (1965), se resolvió que, en la causa de acción directa frente a una aseguradora, un tercero perjudicado tiene derecho a exigir compensación por los daños sufridos, aun cuando la causa de acción contra el asegurado haya prescrito, pero solo si se interrumpió oportunamente la acción contra dicha aseguradora. Véase, *Durán Cepeda v. Morales Lebrón*, 112 DPR 623 (1982). Es decir, aunque la causa de acción estuviese prescrita contra el asegurado, ello no implica que esté también prescrita contra la aseguradora.

VII.

Concluimos que erró el TPI al considerar que la reclamación de los Demandantes contra la Aseguradora estaba prescrita. En primer lugar, en la demanda inicial se incluyó a la Aseguradora, aunque con nombre desconocido. Por tanto, cuando posteriormente se le identificó, los efectos de ello se retrotraen a la demanda inicial, la cual se presentó dentro del año del accidente.

En segundo lugar, y más importante aún, partiendo de la premisa de que el Chofer fuese una parte asegurada en la Póliza en conexión con la responsabilidad pública del Vehículo (lo cual, como veremos, no es correcto), existiría una solidaridad propia entre el Chofer y la Aseguradora que implicaría que interrumpir en cuanto a uno de ellos conlleva automáticamente la interrupción del término en cuanto al otro.

En efecto, en este caso, la Póliza establecía un pacto expreso de solidaridad entre la Aseguradora y su asegurado a favor de terceros. Esto se desprendía claramente de la Sección II, Cláusula A de la Póliza:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies...[16]

Al haberse establecido la solidaridad en la Póliza, los Demandantes podían interrumpir el término prescriptivo para demandar a la Aseguradora mediante una reclamación judicial contra el asegurado bajo la Póliza. De esta forma, la presentación de una demanda contra el asegurado también interrumpiría el término prescriptivo contra la Aseguradora.

VIII.

Ahora bien, un examen detenido de la Póliza arroja que el Chofer no está protegido por la misma, por lo cual los Demandantes

---

[16] Véase Apéndice del Recurso KLAN202300178, pág. 139.

no tienen una causa de acción viable contra la Aseguradora. Veamos.

La Póliza dispone que el asegurado nombrado ("named insured") es Gaither.[17]  También dispone en el segundo inciso ("Item Two") que la misma provee cobertura para el Vehículo.[18]  El dueño del Vehículo es el Sr. Oscar Fernando Castro de Armas,[19] quien se alega era el tío paterno del Chofer y accionista mayoritario de Gaither.[20]

La parte pertinente de la Póliza, llamada "*Business Auto Coverage Form*" (CA 00 01 10 13), SECTION I - COVERED AUTOS, dispone:

> Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos"
>
> **A. Description Of Covered Auto Designation Symbols**
>
> **Symbol – Description Of Covered Auto Designation Symbol**
>
> 1  - Any "Auto"
>
> [...]
>
> 7  - Specifically Described "Autos"
>
> > Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three).
>
> [...]
> 9  - Non owned "autos"
>
> > Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or

---

[17] Véase Apéndice del recurso KLAN202300178, pág. 128.
[18] Véase Apéndice del recurso KLAN202300178, págs. 129 y 131.
[19] Véase Apéndice del recurso KLAN202300178, pág. 127
[20] Véase Apéndice del recurso KLAN202300178, pág. 233.

> members of their house holds but only while used in your business or your personal affairs.
>
> [...][21]

La parte de la Póliza llamada SECTION II - COVERED AUTOS

LIABILITY COVERAGE, dispone:

> **A. Coverage**
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damages" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damages" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgements or settlements.
>
> **1. Who is An Insured**
>
> > The following are "insureds":
> >
> > a. You for any covered "auto"
> >
> > b. Anyone else while using with your permission a covered "auto" you own, hire or borrow **except**:
> >
> > > **(1) The owner or anyone else from whom you hire or borrow a covered "auto".**

---

[21] Véase Apéndice del recurso KLAN202300178, págs. 138-139.

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) **Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household**.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household. (Énfasis suplido).[22]

Por otro lado, el endoso *Hired Autos Specified As Covered Autos You Own* CA 99 16 10 13 de la Póliza (el "Endoso") establece lo siguiente:

**B Changes In Covered Autos Liability Coverage**

The following is added to the **Who is An Insured** provision:

While any covered "auto" described in the Schedule is rented or leased to you and is being used by or for you, its owner or anyone else from whom you rent or lease it is an "insured" but only for that covered "auto".[23]

De lo anterior surge que el Chofer no es un asegurado bajo la Póliza. Ello porque el Chofer no es el principal asegurado (es Gaither), y porque no se alegó que el Vehículo, al momento del accidente, fuese propiedad de, o hubiese sido prestado a, o alquilado

---

[22] Véase Apéndice del recurso KLAN202300178, págs. 139-140.
[23] Véase Apéndice del recurso KLAN202300178, pág. 158.

por, Gaither. De hecho, lo que surge del récord es que, al momento del accidente, el Vehículo se utilizaba para beneficio de Dominos. Aun partiendo de la premisa de que el Vehículo hubiese sido prestado a Gaither, la Póliza excluye como asegurado al dueño del vehículo prestado y también a empleados de Gaither cuando este, o algún miembro de su hogar, es el dueño del vehículo. Ello implica que, en estas circunstancias, el Chofer no es un asegurado bajo la Póliza.

Así pues, como el Chofer no es un asegurado bajo la Póliza, dadas las circunstancias del accidente objeto de la Demanda, los Demandantes no tienen una causa de acción viable contra la Aseguradora. La Aseguradora sólo responde por los actos o la responsabilidad que pueda atribuírsele a algún asegurado suyo conforme a los términos y condiciones de sus obligaciones bajo la Póliza. No responde automáticamente por cualquier accidente en el cual esté involucrado un vehículo incluido en la Póliza. En consecuencia, aunque por otros fundamentos, concluimos que actuó correctamente el TPI al desestimar la Demanda contra la Aseguradora.

IX.

Por los fundamentos antes expuestos, se desestima el recurso KLAN202300195 por falta de jurisdicción y se confirma la *Sentencia* apelada en el recurso KLAN202300178.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones