Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ORIENTAL BANK<br><br>Demandante-Apelado<br><br>v.<br><br>ANTONIO A. REYES RODRÍGUEZ, VIRGINIA DE LOURDES VIZCARRONDO LORENZO Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Demandados-Apelantes<br><br>TRI-STELLAR DEVELOPMENT GROUP, INC.; COMPAÑÍA DE SEGUROS AA<br><br>Terceros Demandados-Apelados | KLAN202300404 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: KCD2014-1917 (802)<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Grana Martínez y la Juez Rivera Pérez.[1]

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2023.

Comparecen el Sr. Antonio A. Reyes Rodríguez, su esposa Virginia De Lourdes Vizcarrondo Lorenzo y la Sociedad Legal de Gananciales compuesta por ambos (parte apelante o matrimonio Reyes Vizcarrondo), para que revoquemos la *Sentencia Parcial* dictada el 13 de marzo de 2023 en el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI),[2] que desestimó con perjuicio la *Reconvención* presentada por la parte apelante contra *Scotiabank de Puerto Rico* (Scotiabank o parte apelada).[3] Dicho dictamen fue objeto

---

[1] Conforme a la Orden Administrativa OATA-2023-085, la Jueza Grace M. Grana Martínez sustituye a la Hon. Gina Méndez Miró.
[2] Notificada el 15 de marzo de 2023.
[3] *Scotiabank Puerto Rico* fue sucesor de *RG Premier Bank*. Sin embargo, en el transcurso del caso hubo una sustitución de parte, ya que Scotiabank se fusionó con *Oriental Bank*, surgiendo la Oriental como principal.

Número Identificador
SEN2023_____

de una *Moción de Reconsideración,* que fue denegada el 5 de abril de 2023.[4]

Perfeccionado el recurso de apelación, procedemos a **confirmar** la *Sentencia Parcial* apelada. Veamos.

**-I-**

El **25 de agosto de 2014,** Scotiabank presentó una acción civil sobre cobro de dinero y ejecución de hipoteca por la vía ordinaria.[5] Alegó que el matrimonio Reyes Vizcarrondo incumplió con los términos estipulados en un pagaré hipotecario que habían otorgado. Por lo cual, adeudaban la suma de $255,267.66 por concepto de principal, más intereses y otras partidas.

El **4 de noviembre de 2014,** el matrimonio Reyes Vizcarrondo presentó una *Contestación a Demanda, Defensas Afirmativas y Reconvención.*[6] En lo que respecta a la reconvención, alegó que el desarrollador —con la anuencia y certificación de Scotiabank— terminó el proyecto de viviendas diferente a lo estipulado; así, ofreció a la venta diecinueve (19) unidades con un descuento. Debido a ello, su apartamento devaluó y solicitó un descuento al precio de venta; además, $2,000,000.00 por daños emocionales y angustias mentales.

El **28 de abril de 2015**, Scotiabank presentó una *Réplica a Reconvención.* Negó todas las alegaciones y especificó, que las mismas no iban dirigidas a su parte. Además, señaló que no era la sucesora de *RG Premier Bank of Puerto Rico* (RG),[7] por lo que, de haber alguna responsabilidad por los daños alegados, le correspondía a RG. Levantó varias defensas afirmativas, entre otras, la prescripción de la reconvención.

---

[4] Notificada el 10 de abril de 2023.
[5] Anejo 4 de la *Apelación,* págs. 29 – 38.
[6] Anejo 5 de la *Apelación,* págs. 39 – 47.
[7] Scotiabank indicó que, mediante una compra asistida, ocurrida el 30 de abril de 2010, adquirió de la *Federal Deposit Insurance Corporation* algunos activos incluyendo el préstamo hipotecario que suscribieron los apelantes con RG.

Luego de trámites procesales, el **31 de agosto de 2017** Scotiabank presentó una *Moción de Sentencia Sumaria en Torno a Scotiabank*,[8] sustentada por diversas evidencias, entre ellas: declaración jurada, cartas, contestaciones a requerimiento de admisiones.[9] Solicitó que se declarara vencido el pagaré hipotecario, y se concediera la ejecución de hipoteca a su favor, ya que el 12 de abril de 2010 el matrimonio Reyes Vizcarrondo compró al desarrollador *Tri-Stella Developers Group* (Tri-Stella) el apartamento 1905 del Complejo Camino Verdes II, por lo que suscribieron un pagaré hipotecario con RG para financiar el referido apartamento. Sin embargo, desde el 1 de febrero de 2014, el coapelante Antonio A. Reyes Rodríguez (Reyes Rodríguez) admitió haber dejado de pagar la propiedad.[10] Scotiabank señaló que no fue parte contratante en el préstamo hipotecario, y que solo fungió como acreedor del desarrollador del proyecto.[11] Tampoco participó del proceso de compraventa de la parte apelante ni en el proceso de financiamiento inicial del proyecto. Por lo cual, el matrimonio Reyes Vizcarrondo no tenía evidencia suficiente para probar sus alegaciones, siendo estas meras especulaciones.[12] Además, la reclamación de daños estaba

---

[8] Anejo 8 de la *Apelación*, págs. 63 – 240.
[9] Entre la evidencia documental sometida, se encuentra:
  (1) Varias secciones de la transcripción de la deposición al coapelante Antonio A. Reyes Rodríguez. (*Véase*, Anejo 8 de la *Apelación*, págs. 175,178,179)
  (2) Carta con fecha del 24 de mayo de 2011 de los apelantes a Scotiabank. (*Véase*, Anejo 8 de la *Apelación*, pág. 240)
  (3) Carta con fecha del 17 de junio de 2011 acuse de recibo por parte de Scotiabank. (*Véase*, Anejo 8 de la *Apelación*, pág. 200)
  (4) Carta con fecha del 26 de marzo de 2012 de los apelantes a Tri-Stella. (*Véase*, Anejo 8 de la *Apelación*, pág. 202 - 203)
  (5) Carta con fecha del 21 de junio de 2014 de los apelantes solicitando prórroga de pago a Scotiabank. (*Véase*, Anejo 8 de la *Apelación*, pág. 205).
  (6) Declaración Jurada de Carlos Simmos Rodríguez – *Retail Administration Officer* de Scotiabank. (*Véase*, Anejo 8 de la *Apelación*, págs. 207 – 209).
  (7) Requerimiento de Admisiones y sus Contestaciones. (*Véase*, Anejo 8 de la *Apelación*, págs. 213 – 215, 234 – 238).
  (8) Carta con fecha del 1 de mayo de 2014 de Scotiabank. (*Véase*, Anejo 8 de la *Apelación*, pág. 239).
[10] Anejo 8 de la *Apelación*, pág. 175.
[11] Scotiabank manifestó que se le otorgó un Acuerdo de *"Forbearance"* al desarrollador, esto permitió que se culminara el proyecto de vivienda.
[12] Scotiabank planteó que de la deposición al señor Reyes Rodríguez, surge que; (1) desconoce quién estableció el precio de venta de las restantes 19 unidades que alega se vendieron a un precio menor que la suya. (*Véase*, Anejo 8 de la *Apelación*, pág. 180).

prescrita, ya que desde el año 2011 la parte apelante tenía conocimiento; por lo cual, solicitó la desestimación con perjuicio de la reconvención.

El **10 de noviembre de 2017,** la parte apelante sometió su oposición a la solicitud de sentencia sumaria. Arguyó, que este Tribunal de Apelaciones había atendido los planteamientos de la solicitud de sentencia sumaria presentada en el recurso *KLCE201500917*.[13] Reiteró que Scotiabank fue quien provocó la devaluación de las propiedades.

Oportunamente, hubo una réplica por parte de Scotiabank,[14] y una dúplica de la parte apelante.[15]

Tras varios trámites procesales,[16] el **4 de mayo de 2022**, Oriental Bank en sustitución de Scotiabank (Oriental o parte apelada) presentó una *Moción Suplementaria a Solicitud de Sentencia Sumaria en cuanto a Reconvención*.[17] Esbozó los mismos planteamientos de la solicitud de sentencia sumaria presentada por Scotiabank y la sustentó con varios documentos, entre ellos: una declaración jurada del Sr. Julio A. Rivera Acevedo y parte de la deposición del coapelante Reyes Rodríguez.[18] Concluyó que la parte apelante no tenía una reclamación que justificara la concesión de un remedio; además, que la reclamación estaba prescrita, ya que tenían conocimiento del daño desde el año 2011, debido a que, para esa fecha, habían remitido una misiva exponiendo el asunto de la

---

(2) quien incumplió su contrato en cuanto a la representación hecha de la propiedad que se le vendería fue Tri-Stella (*Véase*, Anejo 8 de la *Apelación*, pág. 175).
(3) éste no tiene una tasación reciente de su propiedad (*Véase*, Anejo 8 de la *Apelación*, pág. 179).
(4) no han puesto su propiedad en venta. *Véase*, Anejo 8 de la *Apelación*, pág. 178).
[13] Tomamos conocimiento judicial sobre la *Resolución* del recurso *KLCE201500917.*
[14] Anejo 11 de la *Apelación*, págs. 406 – 440.
[15] Anejo 12 de la *Apelación*, págs. 441 – 446.
[16] Según surge del expediente, el 31 de diciembre de 2019, Scotiabank se fusionó con Oriental Bank.
[17] *Véase*, Anejo 18 de la *Apelación*, págs. 501 – 637.
[18] Anejo 18 de la *Apelación*, págs. 537 – 637.

devaluación, la razón y la cantidad a la que ascendía la devaluación de su propiedad.

El **17 de noviembre de 2022**, la parte apelante sometió una *Moción en Oposición a "Moción Suplementaria a Solicitud de Sentencia Sumaria en Cuanto a Reconvención"*.[19] Reiteró que había controversia sobre hechos medulares, por lo que debían atenderse en un juicio en su fondo. Además, los planteamientos de Oriental habían sido denegados en el caso *KLCE201500917* y los hechos propuestos no sustentaban su teoría, por lo que debía negarse la solicitud presentada.

El **9 de enero de 2023**, Oriental presentó *Réplica a "Oposición a Moción en Solicitud de Sentencia Sumaria"*.[20] Arguyó que la parte apelante no logró derrotar los hechos propuestos. Reiteró su planteamiento de prescripción, debido a que la reclamación había sido presentada fuera del término dispuesto para una acción extracontractual. Recalcó que el TPI no había atendido las alegaciones de su sentencia sumaria, razón por la cual, no fue objeto de revisión por este Tribunal de Apelaciones.

El **13 de marzo de 2023,** se emitió una *Sentencia Parcial*,[21] con las siguientes determinaciones de hechos no controvertidas:

> *1. El 21 de noviembre de 2009, la parte demandada [apelante] opcionó el apartamento 1606 del edificio 16 de Camino Verdes II, firmando para ello un contrato de opción de compra.*
>
> *2. En enero de 2010, la corredora de bienes raíces de Camino Verdes II, la señora Olga López, llamó a la parte demandada [apelante] para indicarles que había una vacante en el edificio 19 que ya estaba construido y listo para entrega.*
>
> *3. El 4 de enero de 2010, la parte demandada [apelante] otorgó un Contrato de Compraventa sobre Propiedad Horizontal sobre el Apartamento número 1905 del Condominio Caminos Verdes II.*
>
> *4. Scotiabank no compareció en dicho contrato, ni hizo representación alguna a la parte demandada [apelante] sobre el desarrollo del condominio, las áreas recreativas o el valor de las propiedades opcionadas.*

---

[19] Anejo 20 de la *Apelación*, págs. 642 – 799.
[20] Anejo 22 de la *Apelación*, págs. 803 – 829.
[21] Notificada el 15 de marzo de 2023.; Anejo 2 de la *Apelación*, págs. 3 – 22.

**5.** *Según el contrato de opción de compra y, de ser necesario, la parte demandada [apelante] podía escoger a su discreción la institución financiera de su preferencia para el financiamiento hipotecario para adquirir la unidad que se estaba opcionando.*

**6.** *El 12 de abril de 2010, la parte demandada [apelante] adquirió, mediante compraventa del desarrollador Tri-Stella Development Group, Inc., el apartamento 1905 del complejo Camino Verdes II.*

**7.** *Para financiar esta compraventa, el 12 de abril de 2010, la parte demandada [apelante] suscribió un pagaré hipotecario con RG Premier Bank of Puerto Rico por la suma de $270,000.00 con intereses a razón de 5.50% anual.*

**8.** *El 30 de abril de 2010, la Oficina del Comisionado de Instituciones Financieras de Puerto Rico (en adelante, "OCIF") cerró las operaciones de RG y nombró al Federal Deposit Insurance Corporation (en adelante, "FDIC") como síndico liquidador. En esa misma fecha, y como parte de un proceso de compraventa asistida de activos, el FDIC transfirió ciertos activos de RG a Scotiabank, dentro de los cuales se encontraba el préstamo objeto de la presente reclamación.*

**9.** *El 23 de junio de 2011, Tri-Stella Development Group, Inc., como deudor, y el Sr. Adrián Stella Arroyo, como garantizador, otorgaron un Acuerdo de "Forbearance" (con Scotiabank para atender señalamientos del préstamo de construcción que se encontraba en atraso.*

**10.** *A través del Acuerdo de "Forbearance" Scotiabank no hizo representación alguna sobre detalles de construcción del proyecto de viviendas.*

**11.** *A través del Acuerdo de "Forbearance" Scotiabank no hizo representación alguna sobre el precio de venta o el valor de las unidades de vivienda del proyecto de construcción.*

**12.** *El Acuerdo de "Forbearance" permitió que Tri-Stella Development Group, Inc. culminara el proyecto de construcción del complejo Camino Verdes II.*

**13. *El 24 de mayo de 2011, la parte demandada [apelante] remitió una comunicación a Scotiabank en donde solicitó que se le otorgara un crédito a su hipoteca por la cantidad de $75,000.00, más cualquier otro incentivo otorgado a los nuevos compradores del proyecto de viviendas, en vista de la devaluación que había sufrido su apartamento.***

**14. *Mediante dicha comunicación, la parte demandada [apelante] informó que la devaluación de su propiedad fue producto de la venta de ciertas unidades con su misma localización por el precio de $195,000.00.***

**15. *El 17 de septiembre de 2011 Scotiabank le envió una carta a Antonio Reyes y a Virginia Vizcarrondo [apelante], en la cual, entre otras cosas decía: "El banco no fue el vendedor de la propiedad, sino que es un acreedor cuyo rol se limitó a financiar el precio de compra pactado entre usted y el desarrollador. El banco no puede asumir responsabilidad por la diferencia entre el precio actual de tas unidades y precio original."***

***16. El 26 de marzo de 2012, la parte demandada [apelante] remitió una comunicación a Tri-Stella Development Group, Inc. en donde reclamaron al desarrollador la devolución de la cantidad de $75,000.00 que alega habían sufrido como consecuencia del precio de liquidación en el que se estaban vendiendo las unidades restantes del proyecto.***

***17. Al momento de la compraventa por la parte demandada [apelante] de la propiedad en controversia el 12 de abril de 2010, Scotiabank no había asumido el financiamiento del proyecto de construcción.***

*18. Previo a que Scotiabank asumiera el financiamiento del proyecto de construcción, Tri-Stella Development Group, Inc. había paralizado la construcción del proyecto.*

*19. Scotiabank no le hizo ninguna representación a la parte demandada **[apelante]** sobre lo que el proyecto incluiría o dejaría de tener.*

*20. La oferta de lo que la propiedad tendría o dejaría de tener la hizo únicamente Tri-Stella Development Group, Inc.*

*21. Scotiabank no tenía ninguna obligación pactada con la parte demandada **[apelante]** para proveer todo lo que Tri-Stella Development Group, Inc., como vendedor del desarrollo, se había obligado y había dejado de ofrecer.*

*22. Scotiabank no fungió como desarrollador, constructor, ni contratista del proyecto de viviendas objeto de la presente reclamación.*

*23. Scotiabank no fungió como vendedor o corredor de bienes raíces del referido proyecto de viviendas.*

*24. El 31 de diciembre de 2019, Scotiabank se fusionó con Oriental Bank ("Oriental"), resultando Oriental en la entidad subsistente luego de la fusión.*

*25. A raíz de dicha fusión, Oriental se convirtió en la parte reconvenida objeto de la presente reclamación.*[22]

Ante los hechos no controvertidos, el TPI resolvió que la reconvención contra Oriental estaba prescrita. Señaló que la parte apelante no tenía prueba suficiente para probar su caso. En lo pertinente, expresó:

*"[V]ista la Moción de Sentencia Sumaria en torno a Scotiabank y la Moción reiterando Solicitud de Sentencia Sumaria y en Solicitud de Sentencia Sumaria en cuanto a Reconvención presentada por Oriental de conformidad con la Regla 36 de las Reglas de Procedimiento Civil, y luego de haber examinado toda la evidencia que obra en autos, se declara **CON LUGAR** la misma y en su consecuencia, se **DESESTIMA CON PERJUICIO** la Reconvención presentada por la parte demandada. Se continúan los procedimientos contra Tri-Stella Development Group. [ . . .]".*[23]

---

[22] Anejo 2 de la *Apelación*, págs. 10 – 12. *Énfasis nuestro.*
[23] *Id.*, en las págs. 21 – 22.

El **30 de marzo de 2023,** la parte apelante sometió una *Moción de Reconsideración.*[24] Arguyó que la devaluación de la propiedad no se dio solamente por la venta con descuento de las diecinueve (19) propiedades, sino que la construcción del proyecto, contrario a lo estipulado, influyó también en la devaluación. Recalcó que no conocía del daño hasta que el proyecto finalizó en el año 2014. Reiteró que Scotiabank provocó la devaluación de la propiedad, lo que le impide el disfrute de esta. Por ello, solicitó la reconsideración del referido dictamen ya que la cuestión de, cuándo se advino en conocimiento del daño, era un hecho que se debía dirimirse en un juicio.

El **5 de abril de 2023,** el TPI declaró *No Ha Lugar* la solicitud de reconsideración.[25] Por lo cual, el **9 de mayo de 2023** el matrimonio Reyes Vizcarrondo presentó el recurso de apelación con el siguiente señalamiento de error:

> *ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR HA LUGAR LA SOLICITUD DE SENTENCIA SUMARIA DESESTIMANDO LA RECONVENCIÓN INSTADA, BASÁNDOSE EN QUE LA CAUSA DE ACCIÓN CONTENIDA EN LA MISMA, ESTÁ PRESCRITA.*

El **16 de junio de 2023,** compareció Oriental mediante un escrito en oposición al recurso de apelación.

-II-

A.

La Regla 36 de Procedimiento Civil regula el mecanismo procesal de la sentencia sumaria, cuyo propósito principal es facilitar la solución justa, rápida y económica de casos civiles que no presentan controversias genuinas o reales sobre hechos materiales y esenciales.[26]

---

[24] Anejo 3 de la *Apelación*, págs. 23 – 28.
[25] Anejo 1 de la *Apelación*, págs. 1 – 2.
[26] 32 LPRA Ap. V, R. 36.3 (e); *Bobé v. UBS Financial Services,* 198 DPR 6, 19 – 20 (2017).

En ese sentido, se considera un hecho material esencial *"aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable".[27]* Por lo tanto, procederá dictar una sentencia sumaria:

> [S]i las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que [,] como cuestión de derecho[,] el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[28]

Es decir, este mecanismo podrá ser utilizado en situaciones en las que la celebración de una vista o del juicio en su fondo resultare innecesaria, debido a que el tribunal tiene ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y solo le resta aplicar el derecho.[29]

De manera que, un asunto no debe ser resuelto por la vía sumaria cuando:

> **(1)** existen hechos materiales y esenciales controvertidos; **(2)** hallan alegaciones afirmativas en la demanda que no han sido refutadas; **(3)** surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o **(4)** como cuestión de derecho no procede.[30]

La precitada regla establece los requisitos de forma que debe satisfacer toda solicitud de sentencia sumaria.[31] El inciso (a) de la Regla 36.3 de Procedimiento Civil, dispone que la moción de la parte promovente deberá contener:

> **(1)** Una exposición breve de las alegaciones de las partes;
> **(2)** los asuntos litigiosos o en controversia;
> **(3)** la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> **(4)** una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro

---

[27] *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 167 (2011).
[28] Regla 36.3 (e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (e).
[29] *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 17 – 18 (2015); *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012).
[30] *S.L.G. Szendrey-Ramos v. Consejo de Titulares, supra*, a la pág. 167. Énfasis nuestro.
[31] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 431 (2013).

documento admisible en evidencia que se encuentre en el expediente del tribunal;

**(5)** las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y

**(6)** el remedio que debe ser concedido.[32]

Asimismo, presentada una moción de sentencia sumaria, la parte promovida no deberá cruzarse de brazos ni descansar exclusivamente en meras afirmaciones o en las aseveraciones contenidas en sus alegaciones.[33] Es preciso que la parte promovida formule —con prueba adecuada en derecho— una posición sustentada con contradeclaraciones juradas y contradocumentos que refuten los hechos presentados por el promovente.[34] Por consiguiente, cualquier duda que plantee sobre la existencia de hechos materiales en controversia no será suficiente para derrotar la procedencia de la solicitud.[35] Después de todo, *"[l]a etapa procesal para presentar prueba que controvierta los hechos propuestos por una parte en su Moción de Sentencia Sumaria no es en el juicio, sino al momento de presentar una Oposición a la Moción de Sentencia Sumaria, según lo exige la Regla 36 de Procedimiento Civil".[36]*

En ese sentido, la parte promovida también tiene la obligación de cumplir con las exigencias enunciadas en las cláusulas (1), (2) y (3) del inciso (a) de la Regla 36.3 de Procedimiento Civil.[37] Le corresponde citar con especificidad cada uno de los párrafos, según enumerados en la solicitud de sentencia sumaria, que entiende se encuentran en controversia, al igual aquellos que no.[38] Dicha tarea, deberá ser realizada de forma tan detallada y específica como lo haya hecho la parte promovente y haciendo referencia a la prueba admisible en la cual se sostiene la impugnación, con cita a la página o sección pertinente.[39]

---

[32] 32 LPRA Ap. V, R. 36.3 (a). Énfasis nuestro.
[33] *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 785 (2016).
[34] *Ramos Pérez v. Univisión*, 178 DPR 200, 214 – 215 (2010).
[35] *Oriental Bank v. Perapi et al.*, 192 DPR 7, 26 (2014).
[36] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 122 (2015).
[37] Regla 36.3 (b)(1) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (b)(1).
[38] *SLG Zapata-Rivera v. J.F. Montalvo, supra,* a la pág. 432.
[39] *Id.; Burgos López et al. v. Condado Plaza, supra,* a la pág. 17.

Ahora bien, la inobservancia de las partes con la normativa pautada tiene repercusiones diferentes para cada una. Al respecto, nuestro Tribunal Supremo ha señalado que:

> [P]or un lado, si quien promueve la moción incumple con los requisitos de forma, el tribunal no estará obligado a considerar su pedido. A contrario sensu, si la parte opositora no cumple con los requisitos, el tribunal puede dictar sentencia sumaria a favor de la parte promovente, si procede en derecho. Incluso, si la parte opositora se aparta de las directrices consignadas [en la regla] el tribunal podrá no tomar en consideración su intento de impugnación [de los hechos ofrecidos por el promovente].[40]

En ese mismo orden, nuestra jurisprudencia ha establecido que el deber de numeración no constituye un mero formalismo ni es un simple requerimiento mecánico sin sentido.[41] Este esquema le confiere potestad a los tribunales para excluir aquellos hechos propuestos que no hayan sido enumerados adecuadamente o que no hayan sido debidamente correlacionados con la prueba.[42]

Entretanto, es menester señalar que al ejercer nuestra función revisora sobre decisiones en las que se aprueba o deniega una solicitud de sentencia sumaria, nos encontramos en la misma posición que los foros de primera instancia.[43] Al tratarse de una revisión de *novo*, debemos ceñirnos a los mismos criterios y reglas que nuestro ordenamiento les impone a los foros de primera instancia, y debemos constatar que los escritos de las partes cumplan con los requisitos codificados en la Regla 36 de Procedimi*ento* Civil, *supra*.[44] A tenor con lo expuesto, el Tribunal Supremo insular ha pautado lo siguiente:

> [...] el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. [...]

---

[40] *Meléndez González et al. v. M. Cuebas*, *supra*, a la pág. 111.
[41] *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*, a la pág. 434.
[42] *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*, a la pág. 433.
[43] *Meléndez González et al. v. M. Cuebas*, *supra*, a la pág. 118; *Vera v. Dr. Bravo*, 161 DPR 308 (2004).
[44] *Meléndez González et al. v. M. Cuebas*, *supra*, a la pág. 118.

[Por el contrario], de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[45]

Desde luego, el alcance de nuestra función apelativa al intervenir en estos casos no comprenderá la consideración de prueba que no fue presentada ante el foro de primera instancia ni la adjudicación de hechos materiales en controversia.[46]

**B.**

Por otra parte, la prescripción de las acciones es un asunto de derecho sustantivo que persigue *"evitar la incertidumbre de las relaciones jurídicas y castigar la inacción en el ejercicio de los derechos"*.[47]

Conforme el Art. 1861 del Código Civil (1930),[48] *"[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley"*.[49]

De no existir una disposición especial que determine otra cosa, el tiempo para la prescripción de toda clase de acciones se contará desde el día en que se pudo ejercitar.[50]

En el caso particular de las acciones al amparo del Art. 1802 del Código Civil (1930),[51] estas prescriben por el transcurso de un año desde que lo supo el agraviado.[52]

En esa evaluación opera la *teoría cognoscitiva del daño*, según la cual el plazo prescriptivo comienza a transcurrir desde que el perjudicado descubrió o pudo descubrir el daño y quién lo causó, y conoció los elementos necesarios para poder ejercitar efectivamente su causa de acción.[53]

---

[45] *Meléndez González et al. v. M. Cuebas, supra*, a las págs.,118-119.
[46] *Íd.* Énfasis nuestro.
[47] *García Pérez v. Corp. Serv. Mujer*, 174 DPR 138, 147 (2008).
[48] En el presente caso, corresponde aplicar el *Código Civil de Puerto Rico (1930),* ya que es el Código vigente al momento de los hechos.
[49] 31 LPRA ant. sec. 5291.
[50] Art. 1869 del *Código Civil de Puerto Rico 1930*, 31 LPRA ant. sec. 5299.
[51] 31 LPRA ant. sec. 5141.
[52] Art. 1868 del *Código Civil de Puerto Rico 1930*, 31 LPRA ant. sec. 5298.; *SLG Serrano-Báez v. Foot Locker*, 182 DPR 824, 832 (2011).
[53] *COSSEC et al. v. González López et al.,* 179 DPR 793, 806 (2010).

**-III-**

En **primer orden**, estamos en la misma posición que el TPI para atender una solicitud de sentencia sumaria, por lo cual procedemos a resolverla. En ese sentido, adoptamos por referencia las veinticinco (25) determinaciones de hechos incontrovertidos que esbozó el TPI en la *Sentencia Parcial*, por entender que están sustentados en la prueba que se acompañó.

Como foro apelativo, nos compete determinar si las partes cumplieron con los requisitos que impone la referida Regla 36 de Procedimiento Civil.[54] Un análisis de los documentos sometidos nos lleva a concluir que la parte apelada cumplió con todos los trámites procesales correspondientes a la sentencia sumaria, sin embargo, la parte apelante no cumplió con ello.

En específico, la parte apelada cumplió con enumerar los hechos esenciales y pertinentes, y sostener sus alegaciones con prueba admisible en evidencia. En cambio, los apelantes descansaron en refutar con meras alegaciones sin presentar prueba en contrario.

En **segundo orden**, nos corresponde determinar si el TPI incidió al desestimar sumariamente la reconvención instada por la parte apelante, basado en la prescripción. El error no fue cometido.

Surge del expediente que, la alegada devaluación de la propiedad era conocida por los apelantes desde el año 2011. Según la comunicación remitida a Scotiabank el 24 de mayo de 2011, matrimonio Reyes Vizcarrondo adujo que había sufrido un daño por la devaluación a su propiedad, por lo que le solicitaron un crédito a Scotiabank. Dicho suceso, fue demostrado mediante las determinaciones de hechos no controvertidas #13 y #14.

> ***13.*** *El **24 de mayo de 2011**, la parte demandada remitió una **comunicación a Scotiabank en donde solicitó que se le otorgara un crédito a su hipoteca** por la cantidad de*

---

[54] 32 LPRA Ap. V, R. 36.

> *$75,000.00, más cualquier otro incentivo otorgado a los nuevos compradores del proyecto de viviendas, **en vista de la devaluación que había sufrido su apartamento.***
>
> ***14.** Mediante dicha comunicación, la parte demandada informó que la **devaluación de su propiedad fue producto de la venta de ciertas unidades** con su misma localización por el **precio de $195,000.00**.*[55]

A tenor con la misiva enviada a Scotiabank, desde el año 2011 la parte apelante tenía conocimiento del daño, su extensión, razón y alegado causante del mismo. No obstante, no es hasta el <u>4 de noviembre de 2014</u> que presenta la reconvención reclamando la devaluación sufrida en su apartamento.

En este caso, al Scotiabank, ahora Oriental, no ser parte contractual, corresponde aplicar lo referente a las acciones extracontractuales.[56] Como bien señala el Código Civil de 1930, vigente durante la ocurrencia de esta controversia, las acciones extracontractuales tienen el término prescriptivo de un (1) año desde que el agraviado tiene conocimiento del daño y quien fue el causante de este.

Ante tales circunstancias, resulta razonable concluir que fue a partir del año <u>2011</u> que el matrimonio Reyes Vizcarrondo conoció o pudo conocer el alegado daño y el causante del mismo.

Por lo tanto, la parte apelante tenía un (1) año a partir de entonces para presentar la correspondiente causa de acción; no lo hizo. Así, en exceso del término, el <u>4 de noviembre de 2014</u> la presenta tardíamente la reconvención. Tal como apreció el TPI en su dictamen, la causa de acción contra Scotiabank, ahora Oriental, está prescrita.

Razón por la cual, resolvemos que la reconvención presentada por la parte apelante contra Scotiabank, ahora Oriental, estaba prescrita. Por ende, resolvemos confirmar la Sentencia Parcial.

---

[55] Anejo 2 de la *Apelación*, pág. 11. *Énfasis nuestro.*
[56] *Véase* las determinaciones de hechos #21 a la #23 (Anejo 2 de la *Apelación*, pág. 12).

**-IV-**

Por los fundamentos antes expuestos, resolvemos **confirmar** la Sentencia Parcial apelada.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones